SHARON A. WATT SBN 81377
FILARSKY & WATT LLP
Attorneys at Law
408 Bryant Circle, Suite C
Ojai, California 93023
Telephone:    (805) 640-2970
Facsimile:    (805) 640-2980

Attorneys for Defendant
FALLBROOK UNION HIGH SCHOOL DISTRICT

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARY STRUBLE, As Conservator for CS,

      Plaintiff/Counterdefendant,

v.

FALLBROOK UNION HIGH SCHOOL
DISTRICT, a Local Educational Agency,

      Defendant/Counterclaimant.

)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 07CV 2328 LAB (cab)

**FALLBROOK UNION HIGH SCHOOL
DISTRICT OPENING BRIEF**

    Defendant FALLBROOK UNION HIGH SCHOOL DISTRICT ("District") hereby files its

Opening Brief in the above-referenced matter.

**I
STANDARD OF REVIEW**

    In any action brought under 20 U.S.C. § 1415(i)(2)(A), the Court shall receive the records

of the administrative proceedings, hear additional evidence at the request of a party, and, basing its

decision on the preponderance of the evidence, grant such relief as the court determines is

appropriate.  20 U.S.C. § 1415(i)(2)(C). Due weight shall be given to the administrative

proceedings. *Capistrano Unified School District. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995).

The Court is to consider the findings carefully and endeavor to respond to the hearing officer's

resolution of each material issue, but the Court is free to accept or reject the findings in part or in whole. *Capistrano*, 59 F.3d at 891; *Gregory K. v. Longview School District*, 811 F.2d 1307, 1311 (9th Cir.1987).

The amount of deference accorded the hearing officer's findings is within the discretion of the Court and decreases where findings are not thorough and careful. *Capistrano*, 59 F.3d at 891; *Gregory K.*, 811 F.2d at 1311; *Union School District v. Smith*, 15 F.3d 1519, 1524 (9th Cir.1994). .

## II
## ARGUMENT

**A. Plaintiff has waived all issues on which the District prevailed.**

In the "Errors of Findings of Fact and Law in the Decision" section of Plaintiff's Complaint, Plaintiff alleges that because the Hearing Officer determined that the District did not adequately communicate graduation options to Plaintiff and predetermined placement at the June 2007 IEP meeting, the Hearing Officer should not have decided any other issues that Plaintiff's due process request placed before her. Complaint, 4:25-5:4. Plaintiff also alleges that the Hearing Officer's remedy violated the law. Complaint, 5:8-6:8.

Plaintiff alleges no more, and has waived the issues as to whether the Hearing Officer correctly determined that the District was not required to provide Student with OT services for handwriting in 2005-2006 (Decision (hereinafter, also "Dec."), p. 2, Issue 1.c; p. 16, ¶ 69), Student made sufficient progress to meet his 2005-2006 IEP goals (Dec., p. 2, Issue 1.d; p. 17, ¶ 74), the District was not required to provide Student with a behavioral support plan and provided sufficient behavioral goals in 2005-2006 (Dec., p. 2, Issue 1.e; p. 19, ¶ 86), the District provided social skills training in 2006-2007 (Dec., p. 3, Issue 2.b; p. 26, ¶ 133), the District was not required to provide Student with OT services related to handwriting in 2006-2007 (Dec., p. 3, Issues 2.c; p. 16, ¶ 69), the District timely provided a communication log between District and Plaintiff in 2006-2007 (Dec., p. 3, Issue 2.d; p. 27, ¶ 137), the District timely provided Student with a BSP/BIP in 2006-

2007 (Dec., p. 3, Issue 2.e; p. 26, ¶ 131), the District was sensitive to words and actions that trigger anxiety in Student (Dec., p. 3, Issue 2.f; p. 28, ¶ 146), the District did not deny Student a FAPE because of staff insensitivity towards Plaintiff (Dec., p. 3, Issue 2.g; p. 28, ¶ 147), the District provided Student with an educational program after 5/3/07 (Dec., p. 3, Issue 2.h; p. 29, ¶ 154), and the District provided a safe learning environment in 2006-2007 (Dec., p. 2, Issue 2.j; p. 26, ¶ 131).

This Court should hold that the District prevailed on Issues 1.c, 1.d, 1.e, 2.b, 2.c, 2.d, 2.e, 2.f, 2.g, 2.h, and 2.j, as those issues are outlined in the Decision at pages 2-3, because Plaintiff has waived the issues. *See, e.g., Principal Health Care of Louisiana v. Lewer Agency, Inc.*, 38 F.3d 240, 244 (5th Cir. 1994) (holding that plaintiff waived coverage issue by failing to raise it in declaratory judgment complaint); *Dilley v. Gunn*, 64 F.3d 1365, 1367-68 (9th Cir.1995) (holding that defendants waived issue in opening brief by arguing against the relief granted by a district court rather than the district court's determination that constitutional rights were violated).

**B.  Plaintiff improperly conflates issues, mischaracterizes the law and the remedy, and has failed to exhaust administrative remedies.**

*1.  Plaintiff improperly conflates issues.*

In her 11/20/07 Decision, the Hearing Officer ordered the District to schedule a new IEP meeting to develop an IEP designed to help Student work towards a diploma.  After multiple attempts, on 2/7/08, the District convened an IEP meeting and developed such an IEP.

Plaintiff alleges in her Complaint that the order to convene an IEP meeting to develop an IEP designed to help Student work towards a diploma violated the law.  Plaintiff's attorney further alleges in the Declaration of Ellen Dowd that at the 2/7/08 IEP meeting, the District did not properly follow the Decision and order of Hearing Officer.

Whether the Decision and order violated the law and whether the IEP developed at the 2/7/08 IEP meeting was in conformity with the Decision and order are two separate issues. Plaintiff's argument concedes as much by asserting that the Hearing Officer should never have

ordered the IEP meeting in the first place.

The Hearing Officer did not violate the law by ordering the District to develop an IEP designed to help Student work towards a diploma, and any issue as to whether the 2/7/08 IEP is appropriately designed to help Student work towards a diploma is not properly before this Court because Plaintiff has not exhausted her administrative remedies as to that issue.

**2. The Hearing Officer did not delegate her authority to determine Plaintiff's remedy.**

In support of her argument that the Hearing Officer improperly delegated her authority to the 2/7/08 IEP team, Plaintiff cites to and mischaracterizes *Board of Education of Fayette County v. L.M.*, 478 F.3d 307 (6th Cir. 2007)and *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516 (D.C. Cir. 2005). In *Board of Education of Fayette County*, the Sixth Circuit held that a district court impermissibly allowed an IEP team to determine the compensatory education to be awarded and to determine when the compensatory education had been fulfilled. In *Reid*, the District of Columbia Circuit held that a district court impermissibly allowed an IEP team to determine when to reduce or discontinue compensatory services.

In Student's due process hearing, the Hearing Officer did not delegate her authority to determine Plaintiff's remedy. Rather, the Hearing Officer crafted the remedy by ordering that Student shall be diploma bound and shall be provided placement, goals, and services designed to help Student work toward a diploma. The Hearing Officer merely ordered the District to convene an IEP meeting in order to put into effect an IEP that was in conformity with her Decision and remedy. The Hearing Officer also did not delegate to Student's IEP team the authority to determine when Student's compensatory services shall be terminated. *i.e.*, placement, goals, and services designed help Student work towards a diploma, shall be provided for as long as it takes for Student to obtain a diploma or until Student reaches 22 years of age, whichever comes sooner.

California case law is replete with examples of hearing officers requiring districts to develop IEPs to put in place the remedy crafted by hearing officers. *See San Ramon Valley Unified*

*School District*, 108 LRP 32793 (SEA Cal. 2008) (ordering an IEP meeting to prepare an Individual Transition Plan and citing to *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516 (D.C. Cir. 2005); *San Ramon Valley Unified School District*, 108 LRP 32793 (SEA Cal. 2008); *Solana Beach School District*, 108 LRP 9498 (SEA Cal. 2008); *San Francisco Unified School District*, 107 LRP 7431 (SEA Cal. 2007); *Long Beach Unified School District*, 107 LRP 16065 (SEA Cal. 2006); *Los Angeles Unified School District*, 105 LRP 19412 (SEA Cal. 2005); *San Francisco Unified School District*, 104 LRP 19544 (SEA Cal. 2004); *San Bernardino County Superintendent of Schools, San Bernardino County Department of Behavioral Health, and Banning Unified School District*, 103 LRP 39887 (SEA Cal. 2003); *see also Toledo Public Schools*, 108 LRP 15703 (SEA Ohio 2007).

### 3. Plaintiff has failed to exhaust her administrative remedies.

Exhaustion of administrative remedies is required under the IDEA. *See, e.g.*, 20 U.S.C. § 1415(i)(2) (requiring a due process hearing as a condition precedent for filing a civil action in district court); *Hoeft v. Tucson Unified School District*, 967 F.2d 1298, 1303 (9th Cir. 1992) (explaining the policies that underlie the IDEA's exhaustion doctrine); *see also* 20 U.S.C. § 1415(l) (requiring that a request for due process be filed as a condition precedent to filing a civil action in district court alleging violations of federal law that are also cognizable under the IDEA). A claimant may bypass the administrative process where exhaustion would be futile, where the issue presented is purely a legal question, where the administrative agency cannot grant relief, or when exhaustion would work severe or irreparable harm upon a litigant. *Lucht v. Molalla River School District*, 57 F.Supp.2d 1060, 1068 n. 6 (D.Or. 1999).

In her Complaint, Plaintiff alleges that the District violated the IDEA subsequent to Student's due process hearing and the Decision on the hearing by not considering the continuum of alternative placement options at Student's 2/7/08 IEP meeting and moved to introduce evidence of the alleged violation with documents pertaining to Fusion Learning Center ("Fusion") and the

2/7/08 IEP meeting. *See* Points and Authorities, 2: 4-9; Dowd Declaration, 2:8-14. However, no administrative hearing has taken place on any issue pertaining to the 2/7/08 IEP meeting and Plaintiff has failed to exhaust her administrative remedies on this issue. Plaintiff is barred from turning her appeal into a *trial de novo* by adding this issue. *Ojai Unified School District v. Jackson*, 4 F.3d 1467, 1473 (9th. Cir. 1993).

Furthermore, Plaintiff has not provided this Court with credible evidence that exhaustion is futile. Although Plaintiff alleges that OAH ALJs are not trained and knowledgeable, she has provided no credible evidence of this assertion. *Lucht*, 57 F.Supp.2d at 1068 n. 6; *see also C.S. ex rel. Struble v. California Department of Education*, 2008 WL 1925251 (S.D. Cal. 2008) (denying application for TRO to restrain the CDE from contracting with OAH to conduct due process hearings because, among other things, plaintiffs did not show a likelihood of success on the merits of their claim that defendants are unable and unwilling to properly train ALJs). In addition, Plaintiff has presented no evidence that exhaustion would work severe or irreparable harm upon her or Student. No evidence has been presented to this Court that the District cannot provide Student with classes, goals, and services designed to help him work towards a diploma. *Lucht*, 57 F.Supp.2d at 1068 n. 6. Furthermore, although this Court properly has before it the legal issue of whether the Hearing Officer erroneously ordered the District to implement the remedy constructed by her, any issue as to the appropriateness of the 2/7/08 IEP itself is not purely a question of law and exhaustion cannot, therefore, be excused. *Id.* Finally, Plaintiff does not argue that OAH cannot grant the relief requested, *i.e.*, placement at a nonpublic school or nonpublic agency where Student can obtain a diploma. *Id.*; Complaint, 7:1-2.

## C. Plaintiff was not a credible witness.

Plaintiff was not a credible witness when she testified that she did not know that Student would not be graduating in June 2007 with a diploma, as explained below.

*1. Plaintiff's testimony that she did not know that Student was not diploma bound is inconsistent with her other testimony and actions that she took.*

Plaintiff testified at Student's due process hearing that the first time she ever saw or heard mention that Student was to participate in a high school curriculum leading to a certificate of completion was at Student's due process hearing. 00853:17-00854:14 (Plaintiff's testimony). This testimony is not credible, and is belied by other parts of Plaintiff's testimony and by actions taken by Plaintiff which are inconsistent with this testimony.

Plaintiff's actions during Student's senior year in 2006-2007 indicated that she was aware that Student would be a District student in 2007-2008, which is wholly inconsistent with Plaintiff's assertion that she always thought that Student would obtain a diploma in June 2007. At the 11/2706 IEP meeting, Plaintiff expressed concern that Student was not ready to move on to the fall 2007 transition program and said she instead wanted him to be a second year senior. 02033 and 02041 (11/2706 IEP). Towards the end of the fall 2007 term, Plaintiff took a tour of the District's transition program as a possible placement for Student in the 2007-2008 year. 01370:16-25 (Hunt testimony); *see also* 02043 (11/27/06 transition plan providing for District training and attendance in fall 2007). Plaintiff sent an email sent to Carla Crane on 1/26/07, stating that Plaintiff had yet to decide whether Student would attend Fallbrook High School in 2007-2008, 01781.

Plaintiff claims ignorance yet has been represented by an advocate during much of the time that Student was a District student. Plaintiff had the benefit of an educational consultant, advocate, or attorney at IEP meetings convened on 11/13/04 (02109 Beverley Willey), 5/11/04 (02078 Beverley Willey), 11/3/04 (02075 Beverley Willey; *see also* 01346:13-14 (Hunt testimony that Beverly Wiley, Regional Center, attended the IEP meeting as a consultant to Plaintiff), 5/31/05 (02061 Beverley Willey), 10/19/05 (02059 Mary C. Heed), 5/10/07 (02002, 02005 Mark Luciano), 6/7/07 (01974 Mark Luciano), and 6/7/07 (01628, 01865 Bernadette Bautista-Dobbles).

The evidence shows that Plaintiff was well aware of Student's deficits and consistently took

action that was inconsistent with her claim that she believed Student was diploma bound.  Plaintiff testified that she conserved student in mid-July 2007.  01296:1-7.  *See also* Complaint, 2:11 ("Student is an 18 year-old conserved you man").  The requirements for conservatorship are wholly inconsistent with an ability to obtain a diploma.

To be conserved in California, an individual must be unable to provide properly for his or her personal needs for physical health, food, clothing, or shelter, or substantially unable to manage his or her own financial resources or resist fraud or undue influence, or be developmentally disabled.  Cal. Prob. § 1801.  The petition for a California conservatorship must include a statement of facts addressing, among other things, the inability of the proposed conservatee to properly provide for his or her needs for physical health, food, clothing, and shelter, and to substantially manage his or her own financial resources, or to resist fraud or undue influence.  Cal. Prob. § 1821.  Upon petition for conservatorship, a court investigator shall consider whether he or she believes the proposed conservatee suffers from certain deficits.  Attached collectively hereto as Exhibit 1 are copies of Probate Code sections 1801, 1826, and 811.

Plaintiff testified that she exempted Student from state standardized testing during Student's eighth grade year in 2002-2003, 00860:2-15, 02347,  Plaintiff was informed that Student would be taking special education English and math, 00521:13-21, Plaintiff agreed that Student would not be placed in more rigorous classes upon transitioning from The Country School, 00980:12-20, Plaintiff was told at the 11/3/04 IEP meeting that Student's significant academic delays in all areas preclude success in all state standardized assessments, 00514:14-23, 01528 (11/3/04 IEP),  that this fact was written on the IEP during the meeting and not before, 00987:14-00988:12, 1528 (11/3/04), and Plaintiff requested at the 11/3/04 IEP meeting that Student not take any state assessments, including the CAPA, which is a alternative assessment for those students who are not within the grade level to take the state standardized state test, 00500:6-14, 00509:5-00510:14, 01514, 01342:8-25, the 11/30/05 IEP team discussed whether Student would take any

*Struble v. Fallbrook UHSD*
07CV 2328 (LAB/cab)

state standardized testing and Plaintiff requested that Student attempt only the reading portion, 00528:7-00529:3, 00558:6-13, 01555, and Plaintiff requested on 3/23/07, that the Food and Nutrition teacher modify Student's work, 01828, 01835, 01860.

Plaintiff asserts in her log of alleged problems with the District that she informed Carla Crane on 4/4/07 that Student could not possibly grasp a problem in his Food and Nutrition class that required him to convert recipes for serving 12 people into recipes for serving 8 people. 01874. However, at the 5/10/07 IEP meeting, Plaintiff was provided an example of a CAHSEE exit exam Number Sense problem which asks how many cups of oats does John need to make 6 servings of oatmeal if John uses 2/3 of a cup of oats per serving of oatmeal. 01997 (5/10/07 IEP with CAHSEE sample); 01365:14-24, 01997-01999 (testimony of Sallie Hunt that she produced sample CAHSEE problems to show Plaintiff the types of problems Student would be expected to solve); *see also* 01370:16-25 (testimony of Sallie Hunt that Mark Luciano from the Regional Center stated at Student's 5/10/07 IEP meeting he said it would be torture for Student to attempt the CAHSEE).

In summary, Plaintiff's understanding that Student would be a District student in 2007-2008, her representation by advocates, her conservation of Student, her exemption of Student from state testing in alignment with California content standards, and her demonstrated understanding of Student's deficits are evidence that Plaintiff knew that Student was not diploma bound.

### 2. Plaintiff was consistently informed by IEPs that Student was not on a diploma tack.

Plaintiff made no assertion that she was not provided copies of each of Student's IEPs or any documents associated with Student's IEPs. These IEPs and associated documents informed Plaintiff that Student was not diploma bound.

Student's 5/21/03 IEP provided that Student would take the CAPA rather than the California standardized test, 02133 and 02137 (5/21/03 IEP), and Student could comprehend at an emerging fourth grade level and could compute at a third grade level, 02136.

Student's 1/13/04 IEP informed Plaintiff that functional goals were developed and Student

does well with a functional skills program, *i.e.*, a program that teaches skills required for activities of daily living, such as that available at Fallbrook High School. 01496 and 01499 (1/13/04 IEP).

Student's 5/11/04 IEP informed Plaintiff that Student was preparing for a Certificate of Achievement. 02080 (5/11/04 IEP). This notification was written in clear and large handwriting that stands out from the form's boilerplate. The 5/11/04 IEP also informed Plaintiff that Student would not participate in general education academics because of academic needs, 02080, and Student computed at a third grade level and comprehended passages at a fifth grade level, 02081.

Student's 11/3/04 IEP informed Plaintiff that Student would not take California standardized assessments at Plaintiff's request, 02062 (11/3/04 IEP), and provides that Student read at either the 5.1 or 5.6 grade level and performed math at either the 3.3 or 2.9 grade level, 02063, 0264, 02065, 02066, 02067, and 02068, Student's significant academic delays may adversely affect success in the general core curriculum, and Student would not participate in general education Math, Social Studies, Science, and English because of significant academic delays, 02072. Furthermore, on that same date, Plaintiff was informed that District assessments of Student's academic and functional assessments showed that Student had significant delays in all academic areas, 02227 (Individual Summary of Assessment), and that Student would not take California standardized assessments because of significant academic delays in all areas, 02230 (State or District Wide Assessment). Plaintiff was also informed on 11/3/04 that Student's IEP team anticipated that Student would not be candidate for a regular high school diploma but rather would be a candidate for a certificate of achievement/completion. 02230.

Student's 11/30/05 IEP informed Plaintiff that Student would not take state standardized assessments at her request, 02044 (11/30/05 IEP), Student could multiply with 70% accuracy with a double digit multiplier, 02045, significant academic delays may adversely affect success in the general core curriculum and Student would not participate in general education Math, Social Studies, Science, and Language Arts because of significant academic delays, 02046, Student read

at the level of a beginning 7th grader, 02047 and 02049, and Student would obtain a Letter / Certificate rather than a diploma, 02053.  Furthermore, on that same date, Plaintiff was informed that Student would only take the state's standardized test in Reading because significant academic delays in all areas preclude success on all/any California standardized assessments, 02226 (State or District Wide Assessment), and that the IEP team anticipated that Student would not be candidate for a regular high school diploma but rather would be a candidate for a certificate of achievement / completion, 02226 (State of District Wide Assessment). Petitioner appears to have reviewed the IEP at home because she did not sign and date the ITP until the following day.  02040.

Student's 11/27/06 IEP informed Plaintiff that Student could solve word problems when given the mathematical function, 02035 (11/27/06 IEP), Student would participate in a high school curriculum leading to a Certificate of Completion, 02039, that Student must pass the CAHSEE to earn a diploma and that Student had not passed CAHSEE English and Language Arts, CAHSEE Math, and Algebra 1, 02042, and that the IEP team intended Student to attend a District program for fall 2007, 02043.  Plaintiff testified that she took the 11/27/06 IEP home after the meeting to have ample time to review it and provided written consent to its provisions on the following day after such review.  01304:2-5. Her signature is dated 11/28/06.

Student's 5/10/07 IEP informed Plaintiff that  Student would exit high school with other than a diploma, 01976 (5/10/07 IEP), that Student would participate in a curriculum leading to a Certificate of Completion, 01980, and that the IEP team intended Student to attend a District program in 2007-2008, 01979.

Student's 6/7/07 IEP informed Plaintiff that Student would exit high school with other than a diploma, 01950, that Student at the time could read at a functional level and choose the correct mathematical operation in a one-step word problem, 01958, 01960, and 01961 (6/7/07 IEP), that the IEP team intended Student to attend a District program in 2007-2008, 01962, and that Student would participate in a high school curriculum leading to a Certificate of Completion, 01965, that

Student must pass the CAHSEE to earn a diploma and that Student had not passed CAHSEE English and Language Arts, CAHSEE Math, and Algebra 1, 01966.

Although the evidence demonstrates that Plaintiff was actively involved in all aspects of Student's education and sought immediate District assistance in clarifying situations, *see* 01727-01865 (documents described by Plaintiff as correspondence between parents and District; 01866-1877 (Plaintiff's logs/notes), Plaintiff would have this Court believe that she either did not review the provisions of the foregoing IEPs provided to her or did not request clarification of provisions that were obviously contrary to a program of study leading to a diploma.

### 3. Plaintiff's testimony was unequivocally contradicted by District witnesses.

The District's witnesses consistently testified that Plaintiff was informed that Student was not on a diploma track, and the Hearing Officer found that these witnesses were sincere in their testimony. Dec., p. 13, ¶ 53.

Sallie Hunt, District Special Education Director, testified that the fact that Student was on a track to obtain a certificate of completion was discussed at every IEP meeting since Student was at the Country School in 2003-2004, with the possible exception of the one IEP meeting convened on 5/19/05, to discuss Plaintiff's concerns with Student's paraeducator. 01357:11-18, 02056-02058; *see also* 01377:18-25 (Hunt testimony that she discussed with Plaintiff the fact that Student would be receiving a certificate of completion rather a diploma so many times that she cannot count them). Ms. Hunt remembers discussions with Plaintiff regarding a certificate of completion with specificity and testified that she informed Plaintiff in the winter of 2006-2007 that Student would not be able to go to veterinary school because it was harder than medical school but informed Plaintiff that there are ROP programs for veterinary assistants that might be suitable for Student, 01378:1-7, 01379:5-6, that the ROP program did not require a high school diploma, and that Student was not obtaining a high school diploma. 01378:11-1.

Margaret Martineau, former District School Psychologist and leader/instructor of Student's

Social Skills Group in 2004-2005 and 2005-2006, testified that the 11/3/04 IEP team discussed in detail whether Student would receive a diploma and specifically remembered that Ms. Hunt discussed both the diploma and certificate tracks. 00984:16-20, 00985:14-00986:20. Ms. Martineau specifically recalls a conversation about the diploma versus non-diploma track at the 11/3/04 IEP meeting and the certainty of her recollection was confirmed by her further recollection that she thought, although she did not know, that Student might at the time succeed on a diploma track. 00998:2-12. However, Plaintiff was insistent at the 11/3/04 IEP meeting on making Student comfortable and declined to place him on a diploma track. 00998:13-15. Ms. Martineau recalls that she was surprised by Plaintiff's response. 00998:14-15.

In addition to her specific testimony with regard to the 11/3/04 IEP meeting, Ms. Martineau also testified that at each of Student's 2005-2006 IEP meetings there was a discussion with Plaintiff was to whether Student would receive a diploma or a certificate, 00979:10-19, and that at an IEP meeting that occurred no later than November 2005, there was a discussion about the difference between a diploma and a certificate, and Plaintiff said, "No, that's okay because we want Chris to be comfortable. We understand he has a handicap." 00982:13-00983:1. According to Ms. Martineau, in response to the discussion as to whether Student would be work toward a diploma or a certificate, Plaintiff responded that her big concern was that Student be comfortable and that his anxiety should be reduced as much as possible. 00979:20-23. Ms. Martineau testified that the foregoing statement made by Plaintiff stood out in her mind. 00983:1

Miguel Espinoza, Chris's case manager during his 10th and 11th grades, Director the Workability Program while Student was in the program and one of Student's special education social studies and math teachers, testified that at Student's 5/11/04 IEP meeting, the team discussed whether Student should be on a diploma track and decided instead that Student would work towards obtaining a certificate of completion. 00505:7-00506:9. Mr. Espinoza testified the 11/30/05 IEP team discussed with Plaintiff options for Student's graduation from high school by

either obtaining a diploma or a certificate of completion/attendance, and that Plaintiff agreed that Student would work toward achieving a certificate rather than a diploma. 00522:10-00523:11, 00537:5-22, 00540:319, 01545-01557. Mr. Espinoza also testified unequivocally and after careful questioning to clarify his answer that he asked Plaintiff if she understood that a checkmark on the 11/30/05 IEP next to the box that promotion standards would be governed by the IEP rather than District standards meant that Student was getting a certificate of completion, and that Plaintiff indicated that she understood. 00555:12-0055716, 01552. According to Mr. Espinoza, he discussed with Plaintiff at the 11/30/05 IEP meeting the desire of Student to attend college part time, and the possibility of Student attending a community college without having obtained a high school diploma, 00531:9-18, 00534:17-22, the 11/30/05 IEP listed requirements for obtaining a diploma, including passing all required state and District-wide tests, and the IEP provides that Student would be a candidate for a certificate of educational achievement/completion rather than a diploma. 0000548:18-00551:7 (Espinoza testimony), 01555-01556 (11/30/05 IEP).

In addition to his specific testimony with regard to the 5/11/04 and 11/30/05 IEP meetings, Mr. Espinoza testified that the District routinely discusses with parents at IEP meetings the difference between a student obtaining a certificate of completion of high school and obtaining a high school diploma and requirements for obtaining a high school diploma, including standardized testing, 00495:14-00496:15, and that Plaintiff understood that Student was headed for a certificate rather than a diploma from discussions at IEP meetings, 00554:2-11.

Sandra Magaro, District School Psychologist and Student's Social Skills Group leader/instructor for 2006-2007, testified that the box indicating that Student's graduation plan was to participate in a curriculum leading to a certificate of completion was checked during the 11/27/06 IEP meeting and not before. 01038:24-01039:10, 02039. Ms. Magaro testified that Plaintiff had no questions about Student's graduation plan at the 11/27/06 IEP meeting and had no questions regarding Student's graduation plan for a certificate of completion at the 5/10/07 IEP

meeting. 01040:2-13, 01051: 7-13. Ms. Magaro further testified that she learned that Student would be going to the District's transition program in 2007-2008 at the 11/27/06 IEP meeting, 01102:18-01103:7, and that at the 5/10/07 IEP meeting, the IEP team discussed whether Student had the math skills to attempt the CAHSEE problems, and this discussion as in conjunction with a discussion as to whether Student would obtain a diploma. 01132:11-01133:16, 01997.

Carla Crane, Student's 2006-2007 case carrier and special education teacher for math and functional living skills, testified that Plaintiff told her, "I understand he's on a certificate program. That he's not getting a diploma." 00599:12-20. Ms. Crane also testified that she discusses with the parents of all of her seniors the options of attending the District's transition program, returning to the high school for an additional year of school, or attending Palomar Community College.

Lynette Shires, Student's Food and Nutrition teacher for 2006-2007, testified that she believed she learned that Student was not diploma bound at one Student's IEP meetings when a team member said that Student was not receiving a diploma. 00772:2-10.

### 4. *Plaintiff's testimony is inconsistent with the other evidence.*

Plaintiff testified that if she had realized at the time of the 11/3/04 IEP meeting that Student would not participate in the general education environment for math, social science, and language arts, she would have questioned that. 01313:3-8. However, Plaintiff requested that Student be moved from general education science to special education science in fall 2005. 02056; *see also* 01860 (email sent by Plaintiff and husband to Carla Crane on 5/23/07, informing Ms. Crane of Plaintiff's request to modify Student's Food and Nutrition work).

Plaintiff testified that at the 5/10/07 IEP meeting there was no discussion of the California High School Exit Exam. 00855:2-4. However, Student's 5/10/07 IEP documents the discussion to which Sallie Hunt testified regarding passing the CAHSEE. 01997-01999 (sample CAHSEE math problems attached to 5/10/07 IEP).

Plaintiff testified that the first time she ever saw or heard mention that Student was to

participate in a high school curriculum leading to a certificate of completion was at Student's due process hearing, which began on 10/16/07. 00853:17-00854:14, 01595. Plaintiff directly contradicted her foregoing testimony by also testifying that she first learned that Student would not obtain a diploma at the end of 2006-2007 when her legal counsel informed her. 01328:4-21.

Plaintiff testified that she typed her log of incidents immediately after the incident or as soon as she knew about the incident. 01282:1-15. However, Sallie Hunt, District Special Education Director, testified that Plaintiff's log contains numerous errors of dates. These errors of dates indicate that many of the log entries were not, in fact, entered on the purported date of incident or date of knowledge of the incident. Ms. Hunt testified that the note for 10/5/05, at 4:30 p.m. asserts that Ms. Hunt informed Plaintiff that she had just returned from out of town because her parents were dying but Ms. Hunt did not leave town to see her parents until the end of October 2005 and return from out of town on approximately 11/5/05. 01384:17-01385:10, 01386:11-01387:3. This means that a note purported to have been written on 10/5/05, could not have been written, at least in its entirety, until at least one month later.

Plaintiff's credibility has been undermined by her own testimony and actions, as well as evidence and testimony presented by the District at Student's due process hearing. *See* Ninth Circuit Model Jury Instruction 1.11 (in determining the credibility of a witness, the finder of fact may take into account whether other evidence contradicted the witness's testimony, the reasonableness of the witness's testimony in light of all the evidence, and the witness's interest in the outcome of the case and any bias or prejudice); *see also* California Civil Jury Instruction 107 (allowing the finder of fact to choose not to believe anything that witness said if the finder of fact decides that the witness has deliberately testified untruthfully about something important).

**C. The District did not predetermine Student's placement at the 6/7/07 IEP meeting.**

For seven semesters, the District discussed with Plaintiff the fact that Student was on a track to obtain a certificate of completion; for seven semesters, Student was provided a placement

that was in conformity with the District's understanding that Plaintiff wished Student to be on a track to obtain a certificate of completion; for seven semesters, Student took special education classes that were primarily designed to assist students in obtaining a certificate of completion; and for seven semesters, the District provided Plaintiff with IEPs that documented the District's understanding of Plaintiff's wish that Student be on a track to obtain a certificate.  For seven semesters, despite her diligence about communicating with the District on all issues concerning Student, Plaintiff never informed the District that wished Student to be on a diploma track.

Then, only one month before Student was to receive his certificate of completion, Plaintiff for the first time intimated during Student's 5/10/07 IEP meeting that Student should receive a diploma, despite Plaintiff's recent admission that Student could not possibly solve number sense math problems on the CAHSEE.  *See* 01874 (Plaintiff's log for 4/4/07, regarding the impossibility of Student converting recipe proportions); 01997 (5/10/07 IEP with CAHSEE sample regarding converting recipe proportions).

In response to Plaintiff's request that Student should be diploma bound one month prior to the date on which Student was to receive his certificate of completion, the District discussed the possibility of Student returning to Fallbrook High School or advancing into the District's Transition Program for 2007-2008.  01968.

Sallie Hunt testified that at the 6/7/07 IEP meeting, the team discussed the possibility of Student returning to Fallbrook High School or entering the transition program in fall 2007. 01372:21-25.  However, the IEP team , through consensus, thought that placement in the transition program was most appropriate.  01373:1-9.  After arriving at the consensus, the IEP document was amended and "Bridge" was crossed out as the placement offer.  01374:24-01375:5, 01962.  Ms. Hunt testified that she never gave up on Student but, instead, understood that Student was ready to move on to the next phase of his life and that the transition program would be perfect for him. 01381:18-01382:4.  Ms. Hunt also testified that at the 5/10/07 IEP meeting, she produced sample

CAHSEE problems to show Plaintiff the types of problems Student would be expected to solve, 01365:14-24, 01997-01999, and that Mark Luciano, Regional Center, stated he said it would be torture for Student to attempt the CAHSEE, 01365:22-01366:4.

Sandra Magaro testified that the 6/7/07 IEP indicates that the IEP team discussed placement in a regular classroom at a public day school, 01089:11-16, 01962, and that placement options were discussed at the May/June 2007 IEP meeting, 01130:19-21.

The District did not predetermine Student's placement for 2007-2008, but understood his deficits and limitations, and need to be prepared for independent living, and economic self-sufficiency, and discussed placement options. *See* 20 U.S.C. § 1400(c)(1). The District's offer of the Transition Program was specifically designed to provide Student with such preparation.

**D.  A handwriting goal was not required because the curriculum addressed handwriting.**

Student's signature on documents in the administrative record proves that Student was capable of properly signing his name. 02368 (signature dated 6/6/06); 02498 (12 signatures produced in January 2007, *see also* 00653:10-00654-18 (Crane testimony)).

Carla Crane testified that she worked with Plaintiff and her other students on cursive handwriting throughout 2006-2007, and signing one's name in cursive was one of her classroom goals. 00650:17-00651:1, 00663:22-00664:8. According to Ms. Crane, she also worked with Student and her other students on completing job applications and signing names in cursive at the bottom. 00666:21-00667:4. Ms. Crane testified that Student produced a sheet with his signature written in cursive in her class and without a model in January 2007. 00653:10-00654:21; 002498.

Mary Reisman, Student's special education teacher for English, science and social students in 2004-2005 and for special education English and science in 2005-2006, testified that Student was able to draw with very fine detail. 01202:13-01203:6. Ms. Reisman also testified that she and Miguel Espinoza, Student's Living Skills teacher, worked with Student on his handwriting as part of the standard curriculum. 01228:11-01229:12. Ms. Reisman testified that in 2005-2006, Student

worked on his handwriting daily in her English class by doing daily assignments that included retells of passages read, 01231:17-01232:1, and that Student was able to sign his name in smaller script than is present on District's Exhibit and always spelled his name correctly. 01233:5-01234:9, 02498. According to Ms. Reisman, she made Student write in smaller manuscript, and Student's handwriting did become smaller. 01253:9-16. Student did not require a handwriting goal in 2005-2006 because Ms. Reisman could always read Student's handwriting. 01253:21-23. Ms. Reisman based her testimony regarding Student's handwriting skills on her experience with Student in her class and on Student's entire portfolio that she assembled during the course of a year teaching Student, 01240:3-14, and noted that samples of Student's writing were presented at Student's IEP meetings as part of his portfolio that was brought to the meeting, 01257:21-01258:7.

Miguel Espinoza testified that Student could write his name in cursive, 00532:8-11, and that samples of Student's work, including legible handwriting, were always presented at the IEP meetings, 00565:10-20.

Margaret Martineau testified that as of 2004, Student's fine motor skills were low average on the basis of the Beery Developmental Test of Visual Motor Integration and her observations of Student's performance in art class, 00919:22-00921:14, 02235; *see also* 02261 (Individual Summary of Assessment, Occupational Therapy, conducted on 11/13/01, providing that Student's handwriting was 100% legible). Ms. Martineau testified that Student lacked interest in writing things and was impulsive, 00921:14-00922:3, that the 11/3/04 IEP documents his achievement of the goal that Student would write a 90 word retell with smaller legible handwriting, 00923:9-25, and that Student was able to communicate with handwriting when he wanted, 00943:4-12.

Sandra Magaro testified that Student's score on the Beery Developmental Test of Visual Motor Integration administered to Student in April or May 2007 indicated was average, which is about fine motor skills and visual motor integration. 01048:6-01049:7, 02204.

Sallie Hunt testified that at the 11/3/04 IEP meeting Plaintiff agreed that the District could

*Struble v. Fallbrook UHSD*
07CV 2328 (LAB/cab)

address her concerns about Student's handwriting by requiring that he write a 90 word retell in smaller legible handwriting.  01345:13-01346:3.

In any event, Student had handwriting goals in 2005-2006 and 2006-2007.  02064 (11/3/04 handwriting goal to be achieved by November 2005) and 02016 (3/21/07 IEP handwriting goal to be achieved by June 2007).  Student was unilaterally withdrawn from school shortly after the 3/21/07 IEP and Plaintiff admitted that thereafter Student only practiced signing his name 2 or 3 times per month and that the handwriting sample introduced by Plaintiff as Exhibit U was written on 10/17/07, more than 5 months after withdrawal from school.  00820:20-25, 01279:16-20.

**E. Fusion is not an appropriate placement.**

Margaret Martineau testified that it was necessary to have staff working with Student who are aware of the unique traits of students on the autism spectrum.  00947:12-00948:7.  *See also* District's Supplemental Response to Plaintiff's Lodged Documents, Exhibits 5 and 6 and supporting Declaration (CDE printout stating that it is "false" that Fusion offers special education).

Sallie Hunt testified without rebuttal that Fusion is not a certified nonpublic school.  01382:10-21.  Ms. Hunt further testified that Fusion explained that it purposefully did not want state certification because they did not want the California Department of Education telling them what curriculum they have to teach.  01382:17-21.  *See* District's Supplemental Response to Plaintiff's Lodged Documents, Exhibits 1-3 and 5-6 and Declaration of Geoffrey R. Winterowd (CDE printouts that show that Fusion is not certified and does not provide special education); Educ. Code § 56034 (defining nonpublic nonsectarian school as a private nonsectarian school that enrolls individuals with exceptional needs pursuant to an IEP and that is certified by the CDE).

This Court has no authority to place Student at Fusion because it is not certified.  Educ. Code §56505.2(a) (forbidding a hearing officer from placing a student in a school that is not certified); 20 U.S.C. § 1401(9)(B) (defining FAPE as including special education that meets the standards of the SEA); 20 U.S.C. § 1412(10)(B)(ii) (requiring private placements by public school

districts to meet the standards applicable to public school districts); *San Juan Unified School District/Sacramento County Mental Health*, 28 IDELR 47, 28 LRP 5024 (SEA Cal. 1997) (reconciling its decision that Educ. Code § 56505.2 was a bar to placement at a noncertified school with *Florence County School District Four v. Carter*, 510 U.S. 7, 14, 114 S.Ct. 361, 365-66 (1993), which held that retroactive reimbursement, as opposed to prospective placement, may be awarded even if the private school does not meet state certification requirements).

Finally, the District notes that Plaintiff's original request for due process proposed as resolution of the complaint that Student be placed at a certified nonpublic school, 02506, and upon request from the Hearing Officer for clarification of the issues to be decided, Plaintiff continued to assert that Student should be placed at a certified nonpublic school, 01276:20-25.

**F. The Hearing Officer correctly determined that the District provided Student with FAPE.**

Plaintiff asserts that the Hearing Officer should not have decided all issues that Plaintiff put before her once the Hearing officer determined that Student was denied a FAPE due to the District's procedural violations of not adequately communicating graduation options and by predetermining placement at Student's June 2007 IEP meeting. Complaint, 4:20-5:4.

Plaintiff provides no authority for such an assertion.

The due process hearing was conducted only on issues that Plaintiff presented to the Hearing Officer. *See* Dec., p. 2, n. 3. In addition, the Hearing Officer granted Plaintiff leave to abandon issues. *See* Mediation and Due Process Hearing Request Form, pp. 7-8; Dec., pp. 2-3 (listing the Issues to be decided by the Hearing Officer); Dec., p. 2, n. 3.

Contrary to Plaintiff's unsupported assertion, the Hearing Officer was required to decide each issue put before her. *See* Educ. Code § 56507 ("hearing officer shall indicate the extent to which each party has prevailed on each issue heard and decided"). Accordingly, the Hearing Officer correctly determined that the District provided Student with FAPE when she decided that:

1. The District was not required to provide OT services related to handwriting in 2005-

2006 (Dec., p. 2, Issue 1.c; p. 16, ¶ 69). *See, e.g.*, 02368 (signature dated 6/6/06); 02498 (twelve signatures produced by Student in 2006-2007); 01699 (8/1/07 independent educational evaluation providing that Student's visual motor skills are above average); 02204-02205, 02206-02207 (4/26/07 psychoeducational assessment providing that Student's visuo-motor skills were average and that Student could pick up small objects, copy, cut, and color very well); 02235 (September 2004 psychoeducational assessment providing that Student was able to reproduce some of the more difficult items on the Beery Developmental Test of Visual Motor Integration but noting mistakes of attention and some sensory motor integration deficits); 02245 (5/18/02 psychoeducational assessment providing that Student could color, print name, and cut); 02261-02264 (11/13/01 OT assessment providing that Student's handwriting was 100% legible, visual motor control was average);

  2.  Student made sufficient progress to meet his problem solving goal in his 2005-2006 IEP (Dec., p. 2, Issue 1.d; p. 17, ¶ 70 (clarifying issue as pertaining to the problem solving goal), p. 17, ¶ 74). *See, e.g.*, 02050 (11/30/05 IEP goal); 00906:6-00907:13 (Martineau testimony that Student was finally able to work through a situation where he had misinterpreted something that was going on); 00907:14-21 (Martineau testimony that Student worked through situations in 2005-2006 that would have previously caused him to shut down); 00929:21-00930:23 (Martineau testimony that Student misinterpretation of incidents declined from a rate of 99% misinterpretation to a rate of 70% misinterpretation in 2005-2006); 00957:21-00958:2 (Martineau testimony that Student made substantial progress at the end of 2005-2006); 01033:18-01035:1 (Magaro testimony that Student's goal was continued for 2006-2007 because it was a good way to start); *see also* 01030:10-19 (Magaro testimony that she wrote document at 02359, which provides that Student greatly improved since the beginning of 2006-2007).

  3.  The District was not required to provide a behavioral support plan and provided sufficient behavioral goals in 2005-2006 (Dec., p. 2, Issue 1.e; p. 19, ¶ 86). *See, e.g.*, 02044,

02046, 02050 (11/30/05 IEP providing for counseling services, regrouping time, and problem solving goal); 02454-02497 (communications to parents documenting Miguel Espinoza's work with Student on problems); 00488:9-14 and 00490:5-00491:9 and 00492:24-00493:9 (Espinoza testimony that he informed general education about Student's perseveration, that Student checked in with him at the end of the day, that the life skills class taught Student problem solving techniques). *See also* listing of evidence in support of finding that Student made sufficient progress to meet his problem solving goal in his 2005-2006 IEP in preceding paragraph.

4. The District provided social skills training in 2006-2007 (Dec., p. 3, Issue 2.b; p. 26, ¶ 133). *See* 02036 and 02038 (11/27/06 IEP providing for goals pertaining to problem solving and initiating friendships, weekly individual and small group social skills counseling);  01026:3-1027:18 (Magaro testimony that she provided Student with weekly small group social skills training, worked with Student individually on problems); 02358 (Student's attendance sheet for social skills group; *see also* 01027:19-01028:3 (explaining exhibit)); 02359 (description of social skills group; *see also* 01030:10-01031:2 (explaining exhibit)); *see also* 01033:18-01038:12 (Magaro testimony regarding Student's progress on goals pertaining to problem solving and initiating friendships and work on those goals in the social skills group).

5. The District was not required to provide OT services for handwriting in 2006-2007 (Dec., p. 3, Issues 2.c; p. 16, ¶ 69). *See* evidence in support of finding that the District was not required to provide Student with OT services related to handwriting in the 2005-2006, *supra*.

6. The District timely provided a communication log between District and Plaintiff in 2006-2007 (Dec., p. 3, Issue 2.d; p. 27, ¶ 137). *See, e.g.*, 02275-02340 (email communications between District and parents); 00598:5-19 (Crane testimony regarding her frequent communication with parents by email and telephone); 00618:19-00619:10 and 00646:12-00647:2 (Crane testimony regarding weekly and, at times, daily communication with parents throughout 2006-2007); 01053:4-21 (Magaro testimony that she regularly communicated with parents on a weekly basis

and at other times if there was a problem or if the parents called her); 00434:10- 00437:10 (Hodges testimony that she communicated with parents between 10 and 20 times and answered the parents questions and communicated problems that Student had).

7. The District timely provided a BSP/BIP during 2006-2007 (Dec., p. 3, Issue 2.e; p. 26, ¶ 131). *See, e.g.*, 02017 (notes of meeting to update BSP); 0201802019 (January 2007 BSP); 02020-02031 (March 2007 BIP); Dec., p. 25, ¶¶ 127-128 (finding that fall 2006's minor difficulties were handled effectively and that difficulties in 2007 were addressed appropriately with a BSP and then a BIP); *see also* evidence in support of finding that the District social skills training in 2006-2007, *supra*, and 00411:6-14 and 00415:2- 23 (Hodges testimony that she mediated for Student); 00425:2-12 (Hodges testimony that she discussed Student with general education teachers by email and frequently discussed Student with his case manager); 00425:21-00426:19 (Hodges testimony regarding her involvement in developing the January 2007 BSP); 00432:16-00433:19 (Hodges testimony that she successfully mediated between Student and peer without recurrence of problem in fall 2007); 00447:17-00449:1 (Hodges testimony that she successfully mediated between Student and another peer in fall 2007); 01768 (email regarding mediation).

8. The District was sensitive to words and actions that trigger anxiety in Student (Dec., p. 3, Issue 2.f; p. 28, ¶ 146). *See* 00752:6-00753:7 (Shires testimony that she did not send Student to safe driving assembly and would not send any student to the assembly if the student did not want to attend); 00758:20-00759:13 (Shires testimony that she did not discuss Student's grade in front of the class); 00795:14-00797:21 (Shires testimony that she told Student she was working harder on the assignment than was Student because of necessity of putting packet together for Student multiple times); Dec., p. 28, ¶ 144 (finding that Sallie Hunt would not have triggered anxiety and that parking attendant did not work with Student or know of Student's IEPs or goals).

9. The District did not deny Student a FAPE because of staff insensitivity towards Plaintiff (Dec., p. 3, Issue 2.g; p. 28, ¶ 147). *See, e.g.*, evidence in support of the finding that the District

timely provided a communication log between District and Plaintiff in 2006-2007; 01950-02043

(Student's 2006-2007 IEPs); Dec., p. 28, ¶ 147 (no finding that Sallie Hunt communications were

not intended to be read by Plaintiff).

10.  The District provided an educational program after 5/3/07 Dec., p. 3, Issue 2.h; p. 29, ¶

154). *See, e.g.*, 01950-02005 (6/7/07 and 5/10/07 IEPs); 01295:8-17 (Struble testimony that she

never gave Dr. Ong permission to talk with any District representative); 01889 and 01890 (two

letters from Dr. Ong); 00846:9-00847:7 (Struble testimony that Foods and Nutrition and English

teachers sent home work after Plaintiff unilaterally withdrew Student from school); 02003 (5/10/07

IEP notes that document Plaintiff's refusal to allow School Psychologist to see Student about his

anxiety).

11.  The District provided a safe learning environment in 2006-2007 (Dec., p. 2, Issue 2.j;

p. 26, ¶ 131). *See* 01121:20-01122:6 (Magaro testimony that the District provided a safe

environment); 01123:5-01129:21 (Magaro testimony that Student was never unsafe during an

incident in which he became upset); 01135:7-12 (Magaro testimony that she had no knowledge that

Student was bullied); 01158:11-01163:19 (Villane testimony that stink bomb was not thrown at

Student, that no one called Student names, and that her students were supportive of Student).

### III
### CONCLUSION

For the foregoing reasons, the District respectfully requests that this Court hold that the

District has always provided Student with a FAPE and that Student's May/June 2007 IEP provides

for an appropriate placement.

Dated: June 27, 2008.              Respectfully Submitted,

FILARSKY & WATT LLP

By:    s/Sharon A. Watt
       SHARON A. WATT
       Attorney for Defendant and Counterclaimant
       FALLBROOK UNION HIGH SCHOOL DISTRICT

1
2                          CERTIFICATE OF SERVICE
3          I declare under penalty of perjury that I am employed in the County of Ventura, State of
4   California and that I am over the age of 18 years and am not a party to this action.  My business
5   address is 408 Bryant Circle, Suite C, Ojai, California 93023.
6          On the date noted below, I served the foregoing document described as **FALLBROOK**
7   **UNION HIGH SCHOOL DISTRICT OPPOSITION TO MOTION TO SUPPLEMENT THE**
8   **ADMINISTRATIVE RECORD** by serving counsel of record, Ellen Dowd, Esq., electronically,
9   having verified on the Court's CM/ECF website that such counsel is listed to receive email
10  notification for this case and that there are no other attorneys on the manual notice list.
11
12  Dated:  June 27, 2008
13                                              _____
                                                Cheryl Smith
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28