UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY STRUBLE, as conservator for C.S., | Civil No.    07cv2328-LAB (CAB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION REGARDING THE PARTIES' CROSS MOTIONS FOR REVERSAL OF ADMINISTRATIVE DECISION** |
| FALLBROOK UNION HIGH SCHOOL DISTRICT, a local educational agency, | **[Doc. Nos. 37, 38, 39, 40, 41]** |
| Defendant. | |
| And related counterclaim. | |

I.

INTRODUCTION

This action consists of a complaint and counterclaim brought pursuant to the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400 et seq.  On March 25, 2008, the Honorable Larry Alan Burns ordered, pursuant to 28 U.S.C. § 636(b)(1)(B) and Civil Local Rule 72.1(c)(1)(c), that all matters arising out of the complaint and counterclaim be referred to United States Magistrate Judge Cathy Ann Bencivengo for a Report and Recommendation on the disposition of the case. [Doc. No. 25.] On April 18, 2008, the underlying administrative record was lodged with the court. [Doc. No. 27.]  On May 23, 2008, this Court granted plaintiff's motion to supplement the administrative record, and accepted additional records from both parties. [Doc. Nos.  35, 36.] The parties then filed opening and reply briefs regarding cross motions for partial reversal of the administrative decision. [Doc. Nos. 37 - 41.] On August 1, 2008, this court held a hearing with regard to the cross motions. [Doc. No. 43.]

1

II.

PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff MARY STRUBLE is the conservator of an 18-year-old young man (hereinafter "Student") who attended Fallbrook High School until approximately May, 2007. Fallbrook High School is within the defendant FALLBROOK UNION HIGH SCHOOL DISTRICT ("District"). Student qualifies for special education under the eligibility category of Autism. [Doc. No. 1 at 2.]

In this action, plaintiff has sued the District under, *inter alia,* the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400, et seq., to partially reverse the decision of an administrative law judge ("ALJ") with the State of California, Office of Administrative Hearings ("OAH"), Special Education Division, in OAH Case Number N2007090067 entered on November 20, 2007 (hereinafter the "ALJ decision"). The District has counterclaimed, also seeking a partial reversal of the ALJ decision.

A.  The ALJ Decision

The ALJ decision came about as a result of an administrative due process complaint that was filed by the Student against Fallbrook on September 4, 2007. [Doc. No. 1 at 2.] A hearing was held on the administrative due process complaint on October 16-19, 2007. The primary factual dispute was summarized by the ALJ as follows:

> 2.  Student contends that the District failed to provide Student and his parents with sufficient information regarding Student's graduation options, thereby denying Student a free appropriate public education (FAPE). Student also contends that the District made a predetermination of placement at the June 2007 IEP meeting. The law provides that parents have a right to participate in the development of the individualized education program (IEP) for their child. Part of their participation includes the right to be informed of the availability of FAPE and all available alternative educational programs, both public and nonpublic. On or before a Student's sixteenth birthday, the Student's IEP must include information regarding Student's options for postsecondary goals and transition after high school. . . .
>
> 4.  California law provides two different "tracks" by which a special education student can complete high school. If the student is capable of meeting the requirements to obtain a high school diploma, the student is said to be on a "diploma" track. If a special education student does not have the capability of meeting the requirements for a high school diploma, the child may be placed on a track which leads to a certificate of completion. For example, a certificate of completion might be awarded when a student's limited cognitive abilities make it impossible for the student to pass an algebra class necessary to earn a diploma or to pass the California High School Exit Exam (CAHSEE). The requirements for attaining a diploma from Fallbrook High School include passing an algebra class and passing the CAHSEE. . . .
>
> 9.  Prior to reaching high school age, Student attended school in the Fallbrook Union Elementary School District. During Student's middle school years, Student began attending the Country School, a nonpublic school. During the 2003-2004 school year, Student's first year in the District, Student continued to attend the Country School at the

2

District's expense. During the summer of 2004, Student was gradually transitioned to Fallbrook High School, which Student attended for Student's remaining three years of high school. On May 3, 2007, about a month before the end of Student's senior year of high school, Student's parents pulled Student from the high school based upon the recommendation of Student's private psychiatrist.

10. One of the main factual disputes in this case involves whether the District staff provided Student's parents with sufficient information about Student's options for graduation. Student's mother testified that at no time did the District staff inform Student's parents during any IEP meetings prior to June 2007 that Student would not achieve a high school diploma when he graduated from Fallbrook High School. According to Student's high school report cards, he received mostly As and Bs, and Student's mother believed he was doing well in his classes. She stated that she first learned Student would not graduate with a diploma late in the 2006-2007 school year, when counsel she had retained explained that to her. She said that the District staff never explained what the checked boxes regarding certificate of completion in the IEPs meant. Student wants to earn a diploma. Had Student's mother realized he was not on a diploma track, she would have taken steps to understand why or change it.

11. The District witnesses dispute the testimony of Student's mother. The District contends that Student's mother was aware that Student was working toward a certificate of completion, not a diploma, at all times while he was at Fallbrook High School. . . .

[Doc. No. 1 at 11-13.]

The following specific issues were presented to the ALJ for determination:

1. Did the District fail to offer and provide a free appropriate public education (FAPE) to Student during the 2005-2006 school year when Student was in the eleventh grade in one of more of the following ways:

a. Failure to provide parents with options for Student's graduation.
b. Failure to write any handwriting goals.
c. Failure to provide occupational therapy services for handwriting.
d. Failure to take appropriate action when Student failed to make progress to meet goals.
e. Failure to provide a behavior support plan, and/or failure to write adequate behavior goals.

2. Did the District fail to offer and provide a FAPE to Student during the 2006-2007 school year when Student was in the twelfth grade in one or more of the following ways:

a. Failure to write any handwriting goals.
b. Failure to provide social skills training.
c. Failure to provide occupational therapy services for handwriting.
d. Failure to timely provide communication logs.
e. Failure to timely provide a behavior support plan.
f. Staff insensitivity to words and actions that trigger anxiety in Student.
g. Staff insensitivity to parental concerns.
h. Failure to provide any educational program (such as home hospital or itinerant teacher) after May 3, 2007.
I. Failure to provide parents or Student with options for graduation, and/or predetermination of placement.
j. Failure to provide a safe learning environment.

[Doc. No. 1 at 10-11.]

The ALJ ruled in favor of Student as to issues 1.a., 1.b., and 2.i., and in favor of the District as to all of the other issues. [Doc. No. 1 at 38-43.]   Specifically, the ALJ ruled that the District failed to provide Student with a FAPE during the 2005-2006 and 2006-2007 school years because the District failed to inform Student's parents regarding Student's graduation options, predetermined Student's placement during a June 2007 IEP meeting, and failed to provide Student with a handwriting goal related to signing his name in cursive writing until March 21, 2007. [Doc. No. 1 at 38-43.]

Given the finding that Student lost educational opportunities due to the District's failure to properly inform his parents about his non-diploma track, the ALJ concluded that some measure of compensatory education was appropriate. [ Doc. No. 1 at 44, ¶ 29.] As noted by the ALJ, the more difficult question was what type and/or amount of compensatory education would be appropriate:

> 30.  The more difficult question is what type and/or amount of compensatory education would make up for the educational opportunities which Student lost.  The District's transition program is not designed to give Student the opportunity to work toward a diploma.  Based on Ms. Hunt's [1] testimony that allowing Student to return to high school as a "super senior" was not intended to allow Student to earn a diploma, it does not appear that another year at Fallbrook High School is the appropriate compensatory remedy.
>
> 31.  However, Student presented very little evidence on the subject of the appropriate compensatory remedy.  The Fusion Learning Center ["Fusion"] is not a state certified [nonpublic school ("NPS")], and Student did not present specific evidence about other NPS programs.  Under these circumstances, Student did not meet his burden of proving that an NPS placement should be ordered to provide compensatory education to Student.

[Doc. No. 1 at 44.]

As a result, the ALJ ordered the following remedy:

> 32.  The appropriate remedy under these circumstances is to require the District to hold a new IEP meeting to allow the IEP team to discuss appropriate placement and services to permit Student to work toward a high school diploma.
>
> 33. A new IEP meeting will also remedy the denial of FAPE based on predetermination of placement.  Because the District predetermined the proposed placement at the June 2007 IEP meeting, the District failed to consider other possible options for Student's education.  The appropriate remedy is to order the District to hold another IEP meeting to consider a placement which will permit Student, with appropriate supports and services, to work toward a diploma.  The IEP meeting should be held at a time when Student's expert Dr. Norall and/or any other experts Student wishes to invite to the meeting may be present.  The IEP team should specifically address the issue of placement, services and supports necessary to help Student work toward a diploma.  Possible NPS placements should be considered by the IEP team.  If the IEP team is unable to agree upon an appropriate placement, nothing in this Decision would stop either party from seeking

---

[1]Ms. Hunt is the Special Education Director for the District.

07cv2328

further relief through a future due process proceeding.

34.  The IEP team should also make certain that a handwriting goal for Student's cursive signature is included in Student's next IEP.  That will be sufficient to remedy the failure to include a handwriting goal in the past IEPs.

[Doc. No. 1 at 44, 45.]

The ALJ then issued the following order:

1.  The District is ordered to schedule a new IEP meeting within 30 days of the date of receipt of this Decision.  The meeting will be scheduled at a time convenient to Student, Student's parents, Student's counsel, and any experts Student chooses to bring to the meeting.

2.  At that meeting, the IEP team will discuss and consider placements, goals and services that are designed to help Student work toward a high school diploma, including NPS placements.

3.  Nothing in this Decision is intended to prevent either party from filing a further due process proceeding regarding any proposal made at that IEP meeting.

[Doc. No. 1 at 45.]

Finally, the ALJ held that Student prevailed on Issues 1a., 1b. and 2i., and that the District prevailed on the remaining issues. [Doc. No. 1 at 45.]

B.  February 7, 2008 IEP Meeting

The IEP meeting ordered by the ALJ was held on February 7, 2008. [Doc. No. 29-4, Ex. D.] Although the ALJ specifically provided Student and his parents the opportunity to have their own experts at the IEP meeting [Doc. No. 1 at 45, ¶ 33], the parents apparently declined to do so.[2] [Doc. No. 29-4, Ex. D at 22-24.] The persons present at the IEP meeting were plaintiff, plaintiff's counsel (Ellen Dowd) and various teachers and administrators of the District. [Id. at 22.] At the IEP meeting, the District presented a graduation plan for Student to participate in a high school curriculum leading to a diploma, with a proposed graduation date of 6/10/11. [Id. at 20.] The Student would be placed in a public school in the District, with 60% of his time outside of the general education environment. [Id. ] The IEP Team Meeting Notes reflect that, at various times, the plaintiff was asked for input on goals for the Student, and declined each time. [Id. at 22-24.]At the meeting, plaintiff's attorney made a request

---

[2] It was plaintiff's position that this IEP meeting ordered by the AJL was an improper and unenforceable remedy to the District's FAPE violations.  At oral argument on August 1, 2008, plaintiff's counsel conceded that she and her client viewed this IEP meeting as a settlement conference at which they demanded  placement at Fusion.

1   that Student be placed at Fusion.  This was to be done by having the District reimburse the family for

2   their costs.  The District declined the request because Fusion is not a California licensed nonpublic

3   school and, according to the District, would not provide a FAPE. [Id. ] The parents then rejected the IEP

4   Team's plan and declined the placement offer of the District.[ Id. at 24. ]

5   C.  The Complaint

6         Almost two months prior to the parties engaging in the remedial IEP meeting ordered by the ALJ,

7   plaintiff had already filed her complaint protesting the ALJ's decision and remedy.[3]  In the first claim for

8   relief, plaintiff alleges that, in rendering the underlying administrative decision, the ALJ failed to

9   properly apply the law and incorrectly made factual findings beyond what is required.  Plaintiff requests

10  that all factual findings in the ALJ decision after Factual Finding 56 be omitted from the decision as

11  moot, [Doc. No. 1 at 6] and that the ALJ findings that the District prevailed on any issue should be

12  reversed.[4]  Additionally, plaintiff alleges that the ALJ decision delegates the remedy [of a denial of a

13  FAPE] to an IEP Team which, according to plaintiff, is unlawful and should be reversed.  Finally,

14  plaintiff claims that compensatory education at a nonpublic school, or nonpublic agency, where Student

15  can attain his high school diploma, should be awarded by this Court by operation of law. [Doc. No. 1 at

16  7.]  In the second claim for relief, plaintiff claims that, upon partial reversal, as a prevailing party,

17  plaintiff is entitled to the payment by the District for attorneys fees and costs pursuant to 20 U.S.C. §

18  1415. [Doc. No. 1 at 7.]

19  D.  The Counterclaim

20        In the District's counterclaim, the District seeks reversal of the ALJ's decision where the ALJ

21  ruled in favor of the Student. [Doc. No. 3 at 23-24.] In it's prayer for relief, the District seeks the

22  following:

23

24  _____

          [3]The complaint was filed on December 13, 2007.

25

26        [4]At oral argument on August 1, 2008, plaintiff's counsel acknowledged that plaintiff's purpose
    for requesting that "all factual findings in the ALJ decision after Factual Finding 56 be omitted from the
    decision as moot" and the request that the finding that the District prevailed on any issues be reversed
27  was to have plaintiff declared the only prevailing party in the ALJ hearing for purposes of a fee award.
    Plaintiff offered no evidence or argument in her papers or at the hearing that the ALJ's findings in favor
28  of the District were wrong, simply that they were unnecessary once the ALJ found in favor of plaintiff
    that there had been a denial of a FAPE in 2005-06 and 2006-07.

07cv2328

69. That those portions of the Decision finding that the District failed to provide parents with options for Student's graduation during the 2005-2006 and 2006-2007 school years, failed to discuss options/predetermined placement at a June 2007 IEP team meeting, and failed to provide handwriting goals during the 2005-2006 and 2006-2007 school years be set aside and/or overturned.

70. That the portion of the Decision that ordered that the District shall convene a new IEP team meeting to discuss and consider placements, goals, and services designed to help Student work toward a high school diploma be set aside and/or overturned.

71. That the portion of the Decision that found that Student was a prevailing party on issues [numbered 1a., 1.b. and 2.i.], heard at the special education due process hearing, be set aside and/or overturned.

72. That the District was the prevailing party on the issue numbered [2.a.].

73. For a declaratory judgment that under the IDEA, the District consistently offered Student a FAPE.

74. For a declaratory judgment otherwise affirming the remainder of the Decision of the Hearing Officer with regard to the issues on which the District prevailed.

75. For the district's costs of suit, disbursements, and reasonable attorneys' fees.

[Doc. No. 3 at 24-25.]

E. Motion to Supplement the Record

On May 1, 2008, plaintiff filed a motion to supplement the administrative record [Doc. No. 29]. At that time, plaintiff's counsel revealed to this Court that plaintiff had unilaterally placed Student at Fusion as of April 15, 2008, and that plaintiff now seeks reimbursement for those costs. Most of the additional records plaintiff sought to introduce had to do with the unilateral placement at Fusion. [Doc. No. 29-4.] The Court granted the motion to supplement the record [Doc. No. 35], but during oral argument advised the parties that the Court was concerned that the matters being raised by plaintiff had not been appropriately exhausted in the administrative proceedings, and specifically requested briefing on that issue. The Court also allowed defendant to submit additional responsive documents. [Doc. No. 36.]

III.

STANDARD OF REVIEW

The IDEA is a comprehensive educational scheme that confers on students with disabilities a substantive right to public education. See Van Duyn v. Baker Sch. Dist. 5J, 481 F.3d 770, 776 (9th Cir. 2007); Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1300 (9th Cir.1992). The IDEA provides

1  financial assistance to enable states to meet their educational needs, but conditions funding on the

2  effectuation of a policy that assures all children with disabilities the right to a free appropriate public

3  education. See 20 U.S.C. § 1412(a)(1). To that end, the IDEA requires that school districts develop an

4  IEP for each child with a disability. See Winkelman v. Parma City Sch. Dist., --- U.S. ----, 127 S.Ct.

5  1994, 2000 (2007).

6          When parents are dissatisfied with "the adequacy of the education provided, the construction of

7  the IEP, or some related matter, IDEA provides procedural recourse." Id. at 2001. Participating states

8  must establish procedures giving "[a]n opportunity for any party to present a complaint . . . with respect

9  to any matter relating to the identification, evaluation, or educational placement of the child, or the

10 provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A); see also Cal.

11 Educ.Code § 56501(a). After a complaint is filed, the local or state educational agency must convene a

12 meeting with the parents and the relevant members of the IEP team "where the parents of the child

13 discuss their complaint" and the educational agency "is provided the opportunity to [reach a resolution]."

14 20 U.S.C. § 1415(f)(1)(B)(I). If the educational agency cannot resolve the complaint "to the satisfaction

15 of the parents within 30 days of the receipt of the complaint," id. § 1415(f)(B)(ii), then the parents are

16 entitled to request "an impartial due process hearing," id. § 1415(f).

17         California has adopted legislation to comply with IDEA's due process hearing requirements. See

18 Cal. Educ.Code §§ 56500-56507. Under California law, a parent may initiate a due process hearing

19 regarding the provision of a free appropriate public education for a child and that hearing will be

20 conducted "at the state level." Id. at § 56501(a), (b)(4). The IDEA mandates that administrative hearings

21 be conducted by officers who possess knowledge of relevant education law, and are capable of

22 conducting hearings and rendering decisions "in accordance with appropriate, standard legal practice."

23 20 U.S.C. § 1415(f)(3)(A). To that end, California's administrative hearings must be conducted by "a

24 hearing officer knowledgeable in administrative hearings and under contract with the State Department

25 of Education." Cal.Code Regs. tit. v, § 3082. A decision resulting from the due process hearing "shall be

26 final," 20 U.S.C. § 1415(i)(1)(A), except that "[a]ny party aggrieved by the findings and decision . . .

27 shall have the right to bring a civil action with respect to the complaint presented pursuant to this

28 section, which action may be brought in any State court of competent jurisdiction or in a district court of

1    the United States," id. § 1415(i)(2)(A); see also Cal. Educ.Code § 56505(k).

2         The Supreme Court has established a two-part inquiry for judicial assessment of complaints

3    brought pursuant to the IDEA: "First, has the State complied with the procedures set forth in the Act?

4    And second, is the individualized educational program developed through the Act's procedures

5    reasonably calculated to enable the child to receive educational benefits?" Board of Educ. of Hendrick

6    Hudson Central School Dist., Westchester County v. Rowley ("Rowley"), 458 U.S. 176, 206-07

7    (1982)(fns.omitted).

8         In exercising its discretion within these guidelines, courts are to refrain from conducting *de novo*

9    reviews, but rather are limited to determining whether the administrative decision is supported by the

10   preponderance of the evidence. As the Supreme Court admonished in Rowley:

11        [T]he provision that a reviewing court base its decision on the "preponderance of
          the evidence" is by no means an invitation to the courts to substitute their own notions of

12        sound educational policy for those of the school authorities which they review. The very
          importance which Congress has attached to compliance with certain procedures in the

13        preparation of an IEP would be frustrated if a court were permitted simply to set state
          decisions at nought. The fact that § 1415(e)[5] requires that the reviewing court "receive the

14        records of the [state] administrative proceedings" carries with it the implied requirement
          that due weight shall be given to these proceedings. And we find nothing in the Act to

15        suggest that merely because Congress was rather sketchy in establishing substantive
          requirements, as opposed to procedural requirements for the preparation of an IEP, it

16        intended that reviewing courts should have a free hand to impose substantive standards of
          review which cannot be derived from the Act itself. In short, the statutory authorization to

17        grant "such relief as the court determines is appropriate" cannot be read without reference
          to the obligations, largely procedural in nature, which are imposed upon recipient States

18        by Congress.

19   458 U.S. at 206.

20        In evaluating a complaint under the IDEA, the district court "shall receive the record of the

21   [state] administrative proceedings, shall hear additional evidence at the request of a party, and, basing its

22   decision on the preponderance of the evidence, shall grant such relief as the court determines is

23   appropriate." 20 U.S.C. § 1415(i)(2)(C). The Ninth Circuit has interpreted this as calling for de novo

24   review. Union Sch. Dist. v. Smith, 15 F.3d 1519, 1524 (9th Cir. 1994), cert. denied, 513 U.S. 965

25   (1994). However, it has cautioned that this court must give deference to the state hearing officer's

26   findings, particularly when they are thorough and careful. Id. This court also "must give 'due weight' to

27   judgments of education policy when [we] review state hearings. . . . [C]ourts should not substitute their

28   _____

     [5]This provision is now set forth in 20 U.S.C. § 1415(i)(2)(C)(i).

07cv2328

own notions of sound educational policy for those of the school authorities which they review." Seattle

Sch. Dist., No. 1 v. B.S., 82 F.3d 1493, 1499 (9th Cir.1996), citing to Union Sch. Dist., 15 F.3d at 1524

(quotations omitted).  The amount of deference given to the administrative findings is within the court's

discretion and increases when the findings are "thorough and careful." Capistrano Unified Sch. Dist. v.

Wartenberg, 59 F.3d 884, 891 (9th Cir.1995). A court should give substantial weight to the hearing

officer's decision if the court finds that the decision was careful, impartial, and sensitive to the

complexities of the issues presented. Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1472 (9th

Cir.1993).

In San Diego v. California Special Educ. Hearing Office, the Ninth Circuit stated:

> [T]he court in recognition of the expertise of the administrative agency, must
> consider the findings carefully and endeavor to respond to the Hearing Officer's
> resolution of each material issue. After such consideration, the court is free to accept or
> reject the findings in part or in whole . . . .  Despite their discretion to reject the
> administrative findings after carefully considering them, however, courts are not
> permitted simply to ignore the administrative findings . . . . At bottom, the court itself is
> free to determine independently how much weight to give the administrative findings in
> light of the enumerated factors.

93 F.3d 1458, 1466 (9th Cir.1996) (internal citations and quotation marks omitted).

The Ninth Circuit also has recognized that the procedure under the IDEA is "not a true summary

judgment procedure," but is "essentially . . . a bench trial based on a stipulated record." Ojai, 4 F.3d at

1472. "It is hard to see what else the district court could do as a practical matter under the statute except

read the administrative record, consider the new evidence, and make an independent judgment based on

a preponderance of the evidence and giving due weight to the hearing officer's determinations."

Capistrano, 59 F.3d at 892. "Even though [this method of review] does not fit well into any pigeonhole

of the Federal Rules of Civil Procedure . . . [it] appears to be what Congress intended under the Act." Id.

Finally, the party challenging the administrative decision bears the burden of persuasion on its claim.

Clyde K. v. Pullayup Sch. Dist., No.3, 35 F.3d 1396, 1399 (9th Cir.1994).

IV.

DISCUSSION

This appeal by plaintiff is unusual because what plaintiff presented to the ALJ, what was pled in

the complaint, and what is now being requested in plaintiff's motion for reversal, are three entirely

different claims.  At the time of the ALJ hearing, Student was not enrolled in any school and plaintiff

sought prospective placement at a certified NPS.  At the time the complaint was filed, Student was not enrolled in any school and (in the complaint) plaintiff seeks prospective placement in a "nonpublic school or non-public agency," without indication of whether it should be certified.  Four months after the complaint was filed, Student enrolled at Fusion (a non-certified NPS) and, in the motion for reversal, plaintiff is now seeking retroactive reimbursement (as well as future costs) for the unilateral parental placement.  Nevertheless, plaintiff insists that this Court can decide the issue of whether the parents' unilateral placement at Fusion was appropriate and whether reimbursement and future costs should be awarded.  For the reasons set forth below, this Court is not in a position to decide that issue because it was not pled in the original complaint and has not been administratively exhausted.  However, this Court does make findings as to certain legal and factual issues and recommends remand to the OAH for further administrative proceedings.

Plaintiff's primary quarrel with the ALJ's decision appears to be with the form of relief that was awarded by the ALJ.  After finding that the District denied Student a FAPE during the 2005-2006 and 2006-2007 school years, plaintiff contends that the ALJ should have either (1) ordered the District to prospectively place Student in Fusion, a non-certified nonpublic school, or (2) ordered the District to place the Student in some other nonpublic school. [Doc. No. 38 at 15-16.]  According to Plaintiff, by ordering the parties to participate in another IEP meeting, with a team that already failed the Student, to determine an appropriate placement for Student, the ALJ was unlawfully delegating her authority to the IEP team in violation of the IDEA. [Id.]  In addition, plaintiff argues that placement at Fusion is entirely appropriate and requests reimbursement for funds already paid by plaintiff,[6] and continued funding by the District to Fusion (either by continued reimbursement, or direct payment) for educational and support services, until Student earns his diploma. [Doc. No. 38 at 17-19.]  Finally, plaintiff seeks a ruling that she was the prevailing party, both in the ALJ proceeding and in this appeal. [Doc. No. 38 at 19-20.]

As to plaintiff's complaint, defendant sets forth various defenses.  First, defendant argues that plaintiff has failed to exhaust administrative remedies because (1) plaintiff filed this complaint before

---

[6] As set forth above, this request was made in plaintiff's opening brief, but was not pled in the original complaint, as Student did not begin to attend Fusion until April 2008, approximately four months after the original complaint was filed.

1   she even participated in the IEP meeting ordered by the ALJ, and any disagreements over the IEP

2   presented at the Feb. 7, 2008 IEP meeting should be presented to the ALJ prior to the filing of this

3   appeal, and (2) because Student was unilaterally placed at Fusion after the ALJ decision, the issue of

4   reimbursement (as opposed to prospective placement) has not been properly presented to an ALJ. [Doc.

5   No. 37 at 5-6.]  The District also argues that the ALJ did not improperly delegate her authority by

6   ordering the parties to participate in another IEP meeting. [Doc. No. 37 at 4-5.]  In addition, the District

7   argues that the ALJ and this Court have no authority to place Student at Fusion because it is not

8   certified. [Doc. No. 37 at 20-21.]  Finally, the District argues that this Court should hold that the District

9   prevailed on most of the issues and that plaintiff has waived her right to appeal those issues. [Doc. No.

10  37 at 2-3.]

11          As to the defendant's counterclaim, defendant argues that (1) plaintiff was not a credible witness,

12  (2) plaintiff's testimony was contradicted by District witnesses and other evidence, (3) the District did

13  not predetermine Student's placement at the 6/7/07 IEP meeting, (4) a handwriting goal was not required

14  because the curriculum addressed handwriting. [Doc. No. 37 at 6-20.]  As a result, the District requests

15  that the Court reverse the findings of the ALJ as to Issues 1a., 1b. and 2i., and hold that the District has

16  always provided Student with a FAPE and that Student's May/June 2007 IEP provides for an appropriate

17  placement. [Doc. No. 37 at 25.]

18  A.  Plaintiff's Complaint.

19          Before getting to the issue of whether plaintiff has exhausted her administrative remedies, two

20  fundamental issues need to be addressed.  First, assuming sufficient evidence was presented to the ALJ

21  regarding placement at Fusion[7], could the ALJ have ordered prospective placement of the Student at

22  Fusion?  If not, then was it appropriate for the ALJ to order the parties to attend another IEP meeting to

23  determine an appropriate placement?

24

25

26

27          [7]In plaintiff's original due process complaint, plaintiff sought placement for Student at a <u>certified</u>
    non-public school [AR 02506], and continued to demand such a placement during the ALJ hearing after
    the ALJ sought clarification [AR 01276:20-25]. Plaintiff did present some evidence to the ALJ

28  regarding Fusion  [Doc. No. 1 at 38, ¶ 156], but plaintiff concedes Fusion is not a certified nonpublic
    school.

1        1.  Can School Districts, the ALJ or this Court prospectively place students in non-certified

2    private schools (like Fusion)?

3        The purpose of the IDEA is "to ensure that all children with disabilities have available to them a

4    free appropriate public education ["FAPE"] that emphasizes special education and related services

5    designed to meet their unique needs. . . ." 20 U.S.C. § 1400(d)(1)(A). "Implicit" in the IDEA's guarantee

6    "is the requirement that the education to which access is provided be sufficient to confer some

7    educational benefit upon the handicapped child." Rowley, 458 U.S. at 200.

8        As a condition of funding under the IDEA, the Act requires school districts to adopt procedures

9    to ensure appropriate educational placement of disabled students. See 20 U.S.C. § 1413. School districts

10   must also develop comprehensive plans for meeting the special educational needs of disabled students.

11   See 20 U.S.C. § 1414(d)(2)(A). These plans, known as individualized education plans, or IEPs, must

12   include a written statement of evaluation and plan of action that sets forth the child's present level of

13   educational performance, measurable goals, including benchmarks or short-term objectives, special

14   education and related services to be provided to the child and program modifications or supports for

15   school personnel that will be provided to the child, the child's ability to interact with non-disabled

16   children, a statement of administrative modification, the projected date for the beginning of services, and

17   the anticipated frequency, location and duration of those services, and how the child's progress toward

18   the annual goals will be measured.  20 U.S.C. § 1414(d)(1)(A)(i)-(vi), (viii)).

19       Under 20 USC § 1412(a)(10), a State is eligible for assistance under the IDEA if the State

20   submits a plan that provides assurances to the Secretary that the State has in effect policies and

21   procedures to ensure that the State meets certain conditions with regard to the placement of children in

22   private schools.  With regard to children placed in, or referred to, private schools by public agencies, the

23   IDEA states the following:

24       (B) Children placed in, or referred to, private schools by public agencies

25       (i) In general

26       Children with disabilities in private schools and facilities are provided special
education and related services, in accordance with an individualized education

27   program, at no cost to their parents, if such children are placed in, or referred to,
such schools or facilities by the State or appropriate local educational agency as

28   the means of carrying out the requirements of this subchapter or any other

applicable law requiring the provision of special education and related services to all children with disabilities within such State.

(ii) Standards

In all cases described in clause (i), <u>the State educational agency shall determine whether such schools and facilities meet standards that apply to State educational agencies and local educational agencies</u> and that children so served have all the rights the children would have if served by such agencies.

20 U.S.C. § 1412(a)(10)(B) (emphasis added).

Moreover, the IDEA defines a FAPE as follows:

The term "free appropriate public education" means special education and related services that--

(A) have been provided at public expense, under public supervision and direction, and without charge;

(B) <u>meet the standards of the State educational agency;</u>

(C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and

(D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9)(emphasis added).

Finally, the California Education Code states the following:

(a) <u>A hearing officer may not render a decision that results in the placement of an individual with exceptional needs in a nonpublic, nonsectarian school, or that results in a service for an individual with exceptional needs provided by a nonpublic, nonsectarian agency, if the school or agency has not been certified pursuant to Section 56366.1.</u>

(b) A hearing officer shall consider Sections 56365, 56366, and 56366.1 during a due process hearing concerning an issue of placement of an individual with exceptional needs in a nonpublic, nonsectarian school, or services for an individual with exceptional needs provided by a nonpublic, nonsectarian agency.

Cal. Education Code § 56505.2 (emphasis added).

These statutes are quite clear that school districts and hearing officers in California <u>cannot</u> place students prospectively in non-certified nonpublic schools. However, if a parent has <u>unilaterally</u> placed a Student in a nonpublic school and is seeking <u>retroactive</u> reimbursement (as opposed to prospective placement), then such reimbursement may be awarded under certain circumstances even if the nonpublic school does not meet state certification requirements. See  <u>Florence County School District Four v. Carter ("Carter")</u>, 510 U.S. 7, 14 (1993); <u>School Committee of the Town of Burlington</u>, 471 U.S. 359,

369-370 (1985).  See also San Juan Unified School District/Sacramento County Mental Health, 28

IDELR 47, 57 (SEA Cal. 1997) (retroactive reimbursement (as opposed to prospective placement) may

be awarded even if a private school does not meet state certification requirements).

Under the IDEA, parents who unilaterally decide to place their disabled child in a private school,

without obtaining the consent of local school officials, "do so at their own risk." Iapalucci v. District of

Columbia, 402 F.Supp.2d 152, 161, 162 (D.D.C 2005), citing to Florence, 510 U.S. at 14, and

Burlington, 471 U.S. at 369-370.  Parents may only receive tuition reimbursement if a court concludes

that (1) "the public school placement violated the IDEA *and* (2) "the private school placement was

proper under the Act." Carter, 510 U.S. at 15 (emphasis added).  Importantly, the first factor is a

threshold question: if the public school placement would have been appropriate, the court's analysis

ends, and a disabled child's parents are not entitled to reimbursement.  20 U.S.C. § 1412(a)(10)(C)(i)

(indicating that the IDEA "does not require a local educational agency to pay for the cost of education,

including special education and related services, of a child with a disability at a private school or facility

if that agency made [FAPE] available to the child and parents elected to place the child in such private

school or facility"); M.C. v. Voluntown Bd. Of Educ., 226 F.3d 60,66 (2d Cir. 2000) ("Only if a court

determines that a challenged IEP was inadequate should it proceed to the second question."); T.R. v.

Kingwood Township Bd. Of Educ., 205 F.3d 572, 582 (3d Cir. 2000) ("The threshold question here

focuses on the first prong-viz., whether the Board's proposed placement violated the IDEA . . . . The

parental reimbursement mandate comes into play only if we answer yes to this initial question.").

Here, the ALJ has never been presented with either question.  While the ALJ did rule that the

District denied Student a FAPE in 2005-2006 and 2006-2007 (where District was only providing Student

with "certificate of completion" option), the ALJ has never been presented with the question of whether

the new IEP that was presented at the 2/7/08 IEP meeting (which did purport to provide a "diploma"

option) violated the IDEA.  Moreover, the ALJ has also never been presented with the issue of whether

the "private school [unilateral parental] placement [at Fusion] was proper under the Act." Carter, 510

U.S. at 15.  At the time of the ALJ hearing, Student had not yet been enrolled in Fusion.  Rather, Student

was seeking prospective placement at Fusion which, as set forth above, the ALJ was unauthorized to

1   award.[8] Thus, as is more fully discussed below, neither of these questions have been administratively

2   exhausted.

3          Nevertheless, plaintiff argues that this Court can award compensatory (prospective)

4   education at Fusion at this time, and cites to Draper v. Atlanta Independent School System, 518 F.3d

5   1275 (11th Cir. 2008).  In Draper,  the ALJ had found for the student (Draper) and awarded Draper two

6   remedial options.  The first option provided Draper with substantial additional support services in the

7   School System.  The second option allowed Draper to be placed in a private school and required the

8   School System to pay his tuition, not to exceed $15,000 a year.[9]  These services were available until June

9   2009 or when Draper received a high school diploma, whichever came first.  518 F.3d at 1283.  Both

10   parties sought review by the district court [Draper contested the cap].  While the dispute was pending in

11   the district court, Draper selected the second option, the placement in a private school, and requested

12   placement at the Cottage School, but Draper reserved his right to argue that the second option was

13   inadequate.  Id. The School System sought to enjoin enforcement of option two, but this was denied.  Id.

14   The district court ultimately awarded Draper full services at the Cottage School without the $15,000 cap

15   and extended the time frame the School System had to pay for the school.  The district court found that

16   "there is ample evidence in the record of the type of services [Draper] will require to appropriately

17   educate him within the meaning of the [Act]."  518 F.3d at 1284.  The district court concluded that the

18   Cottage School could address Draper's educational needs and was the "appropriate" placement.  Id.

19          On appeal to the Eleventh Circuit, the School System argued that Draper's award violated the

20   Act as a matter of law because it allowed a placement in a private school when the ALJ provided the

21

22   _____

23          [8]At oral argument on August 1, 2008, plaintiff's counsel conceded that the ALJ was not
     authorized to order prospective placement at Fusion.  She acknowledged that, at the time of the ALJ
24   hearing, she was anticipating that Fusion would be obtaining state certification.  That certification
     apparently never happened.  Nevertheless, plaintiff's counsel  asserts that the ALJ could have authorized
25   placement at another nonpublic school, although no specific evidence as to such a potential placement
     was presented to the ALJ by plaintiff. [See Doc. No. 1 at 38, ¶ 156, and at 44, ¶ 31.]

26          [9]According to the district court opinion in Draper, under option two, Draper was to provide the
     School System a list of three proposed private schools inside the State of Georgia to provide regular
27   services for his dyslexia.  The School System was then required to choose one of the three schools 30
     days from the date it received the list.  One of the schools on the list later denied Draper's application.
28   The School System ultimately agreed to the Cottage School, but insisted on staying within the cap placed
     by the ALJ.  480 F.Supp.2d 1331, 1351 (2007).

1  option of a placement in a public school.  Id. According to the School System, the provision of a public

2  school option by the ALJ was a finding that the School System was able to educate Draper adequately.

3  The Eleventh Circuit doubted that the ALJ had expressed confidence in the ability of the School System

4  to compensate for its failed attempt to educate Draper.  However, said the Eleventh Circuit, even

5  assuming that the ALJ found that the School System could prospectively provide an appropriate

6  educational program for Draper, the argument of the School System failed because the district court was

7  free to fashion appropriate relief for Draper regardless of the options offered by the ALJ. 518 F.3d at

8  1285.  The School System then argued that a purpose of the Act is to make public schools the preferred

9  setting, and therefore Draper's award of prospective placement in a private school is precluded.  Id.

10  Again, the Eleventh Circuit disagreed.  While the act contemplates such education will be provided

11  where possible in regular public schools, the Act also provides for placement in private schools at public

12  expense where this is not possible.  518 F.3d at 1286.

13        Thus, while Draper does support the proposition that a district court is free to award a

14  prospective education at a private school (should it find that a FAPE was not provided by the public

15  school **and** that the private school is an appropriate education), it does not support plaintiff's position

16  that a court can award prospective placement at a non-certified nonpublic school.  Neither the appellate

17  court nor the district court opinions in Draper specify whether the Cottage School was state-certified, or

18  whether that was even an issue under the IDEA and Georgia law.  In Draper, the ALJ ordered placement

19  at a private school as an option, and allowed the School System to pick from a list provided by the

20  student. 518 F.3d at 1283; 480 F.Supp.2d at 1351.  The School System picked the Cottage School. Id.

21  The district court then made that "pick" by the school district the order of the court, which was affirmed

22  by the appellate court. 518 F.3d at 1285.  Here, the ALJ could not, pursuant to the statutes set forth

23  above, order prospective placement at Fusion.  And Draper does not speak to the issue of whether this

24  court could order prospective placement at a non-certified nonpublic school.  Therefore, plaintiff has

25  failed to present authority that this court could order prospective placement of Student at Fusion.

26        Moreover, the issue of prospective placement is essentially moot, because plaintiff has

27  unilaterally placed Student at Fusion and now seeks reimbursement.  As is set forth in Burlington, 471

28  U.S. at 369-370, and Carter, 510 U.S. at 14,  reimbursement is evaluated differently than prospective

17

placement. And, as is set forth below, the issue of reimbursement has not been administratively exhausted.

2. Did the ALJ violate the IDEA by delegating the award of compensatory education to the IEP team?

A student's eligibility for a FAPE under the IDEA is determined by the results of testing and evaluating the student, and the findings of a "multidisciplinary team" and/or "individualized educational plan team" ("MDT/IEP team"). Such a team consists of the disabled student's parents, teachers, and other educational specialists, who meet and confer in a collaborative process to determine how best to accommodate the needs of the students to provide a FAPE. See 20 U.S.C. § 1414(d)(1)(B) (outlining the membership of the IEP team). The federal regulations interpreting the IDEA require that a meeting to develop an IEP be held within thirty (30) days of the determination of a child's need for special education and related services. 34 C.F.R. § 300.343(b)(2).

The IDEA also guarantees parents of disabled children the opportunity to participate in the evaluation and placement process. See 20 U.S.C. § 1414(f) (allowing for alternative means of participating in meetings, such as tele- or video-conferencing), 1415(b)(1) (ensuring that the parents have the opportunity to participate fully in the process by providing access to records relating to the child and allowing for independent evaluations of the child). Parents who object to their child's "identification, evaluation, or educational placement" are entitled to an impartial due process hearing. See 20 U.S.C. §§ 1415(b)(6)(A) (permitting the filing of a complaint by objecting parents), (f)(1)(A) (providing parents who file a complaint under § 1415(b)(6) with the opportunity to have an impartial due process hearing). At the due process hearing, parents have a "right to be accompanied and advised by counsel." 20 U.S.C. § 1415(h)(1).

As plaintiff points out, IDEA due process hearings "may not be conducted by an employee of the State educational agency or the local educational agency involved in the education or care of the child." 20 U.S.C. § 1415(f)(3). According to plaintiff, by delegating the provision of compensatory education to the IEP team, the ALJ was running afoul of this provision. [Doc. No. 38 at 15-16.] To support this argument, plaintiff cites to Reid v. District of Columbia, 401 F.3d 516 (D.C. Cir. 2005).

In <u>Reid</u>, a hearing officer concluded that the school district had denied the student a FAPE, and ordered 810 hours of compensatory education. The hearing officer also empowered the student's IEP team to "direct []" implementation of the award. "The services are to be reduced or discontinued," he added, "on the decision of the IEP team that Minor no longer needs or is not benefitting from this compensatory education. The team's decision that [Minor] no longer needs or is not benefitting from this award of compensatory education services will terminate this award. The team decision and reasoning in this regard are to be fully explained in the IEP meeting notes." 401 F.3d at 520. The student then challenged the ALJ's decision in District Court. After the District Court granted summary judgment for the school district, the appellate court reversed, holding that an IDEA hearing officer may not authorize IEP teams to "reduce or discontinue" compensatory education awards. 401 F.3d at 526, 527.

Here, however, the ALJ's decision does not violate <u>Reid</u>. The ALJ's decision does not allow the IEP team to "reduce or discontinue," <u>id.</u>, the compensatory education award. Rather, the ALJ is specific that the District was to hold another IEP meeting to devise a placement that would permit the Student to work toward a diploma. The ALJ also required that the parents and parents' experts be included in the IEP team. [Doc. No. 1 at 45.] If the IEP team could not agree, then the parties were free to file a further due process proceeding regarding any proposal made at the IEP meeting. [Doc. No. 1 at 45.]

Where "the district court does not believe the record is sufficient to permit it to make the highly nuanced judgments necessary to resolve the claim . . . ., " it is appropriate to remand a compensatory education claim to the responsible educational authority for consideration. <u>Maine School Administrative District No. 35 v. Mr. R</u>, 321 F. 3d 9, 20 (1st Cir. 2003). <u>See</u> <u>also</u> <u>Mr. I ex rel. L.I. v. Maine School Admin. Dist. No. 55</u>, 480 F.3d 1, 26 (1st Cir. 2007) (appellate court held it was "sensible" for district court to order the school district to convene an [IEP] meeting to develop an IEP for student with special needs, since [IEP team] could better assess the student's special needs). If it is appropriate for a district court to remand a compensatory education award to an IEP team, then there is no reason why an ALJ could not refer a matter back to an IEP team to devise an IEP consistent with the ALJ's decision. In fact, there are numerous examples of California administrative decisions where hearing officers have required

19

districts to develop IEP's to put in place the remedy crafted by hearing officers. See e.g. San Francisco Unified School District, 107 LRP 7431 at 23, ¶4 (2007)(school district ordered to complete an assessment of Student in areas of mathematics skills and central auditory processing and then to convene an IEP team to consider these assessments and to develop an IEP that meets all legal requirements); Long Beach Unified School District, 107 LRP 16065 at 42, ¶ 2(2006)(school district ordered to convene an IEP team meeting to develop an IEP "consistent with this decision"); San Francisco Unified School District, 104 LRP 19544 at 19, ¶1(2004)(school district ordered to convene IEP team meeting, to include specific individuals, and to conform the Student's IEP to the hearing officer's decision).  Therefore, the compensatory education award provided by the ALJ requiring the IEP team to develop a plan to enable Student to work toward a high school diploma did not violate the IDEA.

        3.  Exhaustion of Administrative Remedies

        Given that the ALJ could not order prospective placement at Fusion, and that her order directing a new IEP meeting was appropriate, the next question is whether plaintiff has failed to exhaust administrative remedies.  Parents and disabled students may seek relief for education-related injuries under federal laws other than the IDEA. See Blanchard v. Morton Sch. Dist., 420 F.3d 918, 920 (9th Cir. 2005). However, the IDEA requires that before plaintiffs may file a civil action under "the Constitution, the Americans with Disabilities Act, title V of the Rehabilitation Act or other Federal laws protecting the rights of children with disabilities," they must exhaust the IDEA's due process hearing procedure if the action "seek[s] relief that is also available under" the IDEA. 20 U.S.C. § 1415( l). The IDEA's exhaustion requirement recognizes the traditionally strong state and local interest in education, allows for the exercise of discretion and educational expertise by state agencies, affords full exploration of technical educational issues, furthers development of a factual record and promotes judicial efficiency by giving state and local agencies the first opportunity to correct shortcomings. See Hoeft v. Tucson Unified School Dist., 967 F.2d 1298, 1303 (9th Cir. 1992).

        However, "[t]he [IDEA's] exhaustion requirement is not . . . a rigid one." Porter v. Bd. of Trustees of Manhattan Beach, 307 F.3d 1064, 1069 (9th Cir.2002). Plaintiffs need not seek a due process hearing "where resort to the administrative process would either be futile or inadequate." Hoeft, 967 F.2d

at 1303. But a party that alleges futility or inadequacy of IDEA administrative procedures bears the burden of proof. See Robb, 308 F.3d 1047, at 1050 n. 2 (9th Cir. 2002).

The futility exception derives from the language of the IDEA itself, which limits the exhaustion requirement to cases where the plaintiff "seek[s] relief that is also available" under the IDEA. 20 U.S.C. § 1415( l). If the plaintiff seeks a remedy for an injury that could not be redressed by the IDEA's administrative procedures, then the claim falls outside § 1415( l)'s rubric and exhaustion is unnecessary. See Robb, 308 F.3d at 1050. On the other hand, if the injury could be redressed "to any degree" by the IDEA's administrative procedures - or if the IDEA's ability to remedy an injury is unclear - then exhaustion is required.  See id.

Here, there is no evidence that exhaustion of administrative remedies would be futile.  In fact, the ALJ ruled for the plaintiff as to the primary issues presented in the underlying due process complaint. Plaintiff was simply unhappy with the remedy.  But this Court has concluded that the remedy was appropriate. Moreover, the remedy plaintiff now seeks (reimbursement for a unilateral placement at Fusion) can be redressed by the IDEA's administrative procedures. Therefore, plaintiff must exhaust administrative remedies with regard to the following issues: (1) did the new IEP (presented at the 2/7/08 IEP meeting) violate the IDEA and, if so,  (2) was the private placement at Fusion appropriate under the Act.

B.  The District's Counterclaim

In the counterclaim, the District argues that (1) plaintiff was not a credible witness, (2) plaintiff's testimony was contradicted by District witnesses and other evidence, (3) the District did not predetermine Student's placement at the 6/7/07 IEP meeting, (4) a handwriting goal was not required because the curriculum addressed handwriting. [Doc. No. 37 at 6-20.]  As a result, the District requests that the Court reverse the findings of the ALJ as to Issues 1a., 1b. and 2i., and hold that the District has always provided Student with a FAPE and that Student's May/June 2007 IEP provides for an appropriate placement. [Doc. No. 37 at 25.]

As set forth previously, the amount of deference given to the administrative findings is within the court's discretion and increases when the findings are "thorough and careful." Capistrano Unified Sch.

07cv2328

Dist. v. Wartenberg, 59 F.3d at 891.  A court should give substantial weight to the hearing officer's decision if the court finds that the decision was careful, impartial, and sensitive to the complexities of the issues presented.  Ojai Unified Sch. Dist. v. Jackson, 4 F.3d at 1472.

Here, the ALJ appears to have carefully considered all of the evidence presented by the parties, and has set forth her findings and conclusions in a thorough and well-reasoned 38-page opinion.  While there may have been evidence presented that arguably contradicted the plaintiff's testimony, the ALJ appears to have thoroughly evaluated all of the evidence, and carefully assessed the credibility of all of the witnesses, including plaintiff.  As a result, this Court declines to reverse the findings and conclusions of the ALJ as to Issues 1a., 1.b. and 2.i, and recommends that the counterclaim be dismissed with prejudice in its entirety.

C.  Prevailing party

Under the IDEA, "the court, in its discretion, may award reasonable attorney's fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i) (emphasis added). A prevailing party is one who "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." Parents of Student W. v. Puyallup Sch. Dist., No. 3, 31 F.3d 1489, 1498 (9th Cir.1994) (internal quotation omitted). The success must materially alter the parties' legal relationship, cannot be de minimis and must be causally linked to the litigation brought. Id.; see also Van Duyn v. Baker School District, 481 F.3d 770, 783 (9th Cir. 2007); Park v. Anaheim Union High Sch. Dist., 464 F.3d 1025, 1034-37 (9th Cir.2006).

A party is "prevailing" where it can "point to a resolution of the dispute which changes the legal relationship between itself and the defendant." Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989), quoted in Kletzelman v. Capistrano Unified Sch. Dist., 91 F.3d 68, 71 (9th Cir. 1996); see also Tex. State Teachers Ass'n, 489 U.S. at 792-93 ("The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties. . . ."). "[T]he prevailing party inquiry does not turn on the magnitude of the relief obtained." Farrar v. Hobby, 506 U.S. 103, 111 (1992).  Rather, a "prevailing party" need only "obtain an enforceable judgment against the defendant from whom fees are sought". Id. at 113-14. Accordingly, a prevailing party need not succeed

07cv2328

on all issues, but only on "any significant issue." <u>Parents of Student W.</u>, 31 F.3d at 1498 (internal quotation marks omitted). Moreover, a prevailing party need not achieve all of the relief claimed, but merely "some of the benefit the parties sought in bringing the suit." <u>Id</u>. (internal quotation marks omitted).

Here, plaintiff was the prevailing party at the ALJ hearing, because plaintiff was afforded significant relief that materially altered the relationship of the parties. Student went from a situation where he was only provided with a "certificate of completion" option, to an order that the IEP team devise a plan to put Student on the "diploma" track. The fact that the ALJ ruled in favor of the District on other issues does not change the fact that plaintiff prevailed at the ALJ hearing. It cannot be said at this time, however, that either party has prevailed in this appeal. As is set forth below, plaintiff will not be getting the relief she requested, as this court is recommending that the action be stayed and the matter be remanded to the ALJ for further administrative proceedings. Defendant is also not a prevailing party, because this court recommends that the counterclaim be dismissed with prejudice in its entirety.

Defendant is correct, however, that plaintiff has now waived her right to appeal the ALJ's decision as to all issues 1.c., 1.d., 1.e., 2.a., 2.b., 2.c., 2.d., 2.e., 2.f. 2.g., 2.h., and 2.j. because plaintiff failed to present any argument or evidence as to why those issues should be reversed. <u>See</u> <u>Collins v. City of San Diego</u>, 841 F.2d 337, 339 (9th Cir. 1988)(citations omitted)(claims that are not addressed in an appellant's brief are deemed abandoned). While the complaint requests that the ALJ decision's statements that the District prevailed on any issue should be reversed [Doc. No. 1 at 7], plaintiff concedes that this was actually to support plaintiff's request that she be deemed the prevailing party. Moreover, plaintiff failed to provide any argument or evidence as to why the ALJ's decision as to those issues should be reversed. Therefore, plaintiff has waived her right to further appeal the ALJ's decision as to issues 1.c., 1.d., 1.e., 2.a., 2.b., 2.c., 2.d., 2.e., 2.f. 2.g., 2.h., and 2.j.

D. <u>Proposed Course of Action</u>

As set forth above, plaintiff has failed to exhaust her administrative remedies as to two issues: (1) did the new IEP (presented at the 2/7/08 IEP meeting) violate the IDEA and, if so, (2) was the private placement at Fusion appropriate under the Act? Moreover, as to the latter question, the record is simply

07cv2328

not sufficient for this court to make the "highly nuanced judgments"[10] necessary to resolve this claim (which was not originally pled) for compensatory education.[11]   Therefore, this court recommends that the action be stayed and that the matter be remanded to the ALJ for further administrative adjudication.  See Mr. R, 321 F.3d at 20 ([i]f the district court does not believe that the record is sufficient to permit it to make the highly nuanced judgments necessary to resolve the claim for compensatory education, it may remand the matter for further administrative adjudication); See also Shapiro ex rel. Shapiro v. Paradise Valley Unified Sch. Dist. No. 69, 152 F.3d 1159, 1160-61 (9th Cir. 1998)(per curiam)(proper procedure where district court remanded matter to ALJ for further determination was for action to be stayed pending a final determination by the hearing officer).

Finally, should the ALJ find that Student is eligible for reimbursement under Carter, the ALJ should also evaluate whether plaintiff was required to comply with the notice requirements pursuant to 20 U.S.C ¶ 1412(a)(10)(C)(iii) and, if so, whether there was such compliance.  Even when a court finds that parents of a disabled child are eligible for tuition reimbursement under Carter, amendments made to the IDEA in 1997 allow a court to reduce or deny reimbursement under certain circumstances.  See 20 U.S.C. ¶ 1412(a)(10)(C)(iii); Ms. M.V. Portland Sch. Comm., 360 F.3d 267, 271 (lst Cir. 2004).  A court may reduce or deny tuition reimbursement if, inter alia, a disabled child's parents, prior to or during the most recent IEP meeting before removing their child from school, failed to "inform the IEP team that they were rejecting the placement proposed by the public agency to provide a [FAPE] to the child including stating their concerns and their intent to enroll their child in a private school at public expense . . . ." 20 U.S.C. ¶ 1412(a)(10)(C)(iii)(I)(aa).  A court may also reduce or deny tuition reimbursement 'upon a judicial finding of unreasonableness with respect to actions taken by the parents." Id. ¶ 1412(a)(10)(C)(iii)(III).

---

[10]Mr. R, 321 F.3d at 20.

[11]One issue that has not been made clear to this court is whether the proposed curriculum at Fusion will result in Student actually obtaining a high school diploma.

V.

CONCLUSION AND RECOMMENDATION

For the foregoing reasons, this Court **RECOMMENDS** that the District Court:

(1) **DISMISS** the District's counterclaim with prejudice in its entirety;

(2) As to plaintiff's complaint, **STAY THE ACTION** and **REMAND** the matter to the OAH for a final determination by a hearing officer as to the following two issues:   (A) did the new IEP (presented at the 2/7/08 IEP meeting) violate the IDEA and, if so,  (B) was the private [unilateral parental] placement at Fusion appropriate under the Act?[12]; and

(3) **DECLARE** that plaintiff was the prevailing party in the ALJ hearing.

(4) **DECLARE** that plaintiff has waived her right to appeal the ALJ's decision as to Issues 1.c., 1.d., 1.e., 2.a., 2.b., 2.c., 2.d., 2.e., 2.f. 2.g., 2.h., and 2.j.

**IT IS HEREBY ORDERED** that no later than **September 16, 2008**, any party to this action may file written objections to this Report and Recommendation with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 23, 2008**.

**IT IS SO ORDERED.**

DATED:  August 29, 2008

_____

**CATHY ANN BENCIVENGO**
United States Magistrate Judge

---

[12]If the hearing officer decides both of the questions in the affirmative for plaintiff, then the hearing officer should also determine whether there are any issues regarding notice under 20 U.S.C. §1412(a)(10(C)(iii), the reasonableness and appropriateness of the billings submitted to date by Fusion, and how future billings should be handled.