Ellen Dowd, Esq.  SBN 141206
ellendowd@sbcglobal.net
Special Education Legal Center
2658 Del Mar Heights Road #228
Del Mar, California  92014
(858) 342-8360
Fax (858) 755-6348
Attorney for Plaintiff/Counterdefendant, MARY STRUBLE

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY STRUBLE, As Conservator for CS,<br><br>Plaintiff,<br><br>v.<br><br>FALLBROOK UNION HIGH SCHOOL DISTRICT, a Local Educational Agency<br>Defendant.<br><br>FALLBROOK UNION HIGH SCHOOL DISTRICT,<br>Counterclaimant,<br><br>v.<br><br>MARY STRUBLE, As Conservator for CS,<br><br>Counter-Defendant, | CASE NO.: 07 CV 2328 LAB (CAB)<br><br>**PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION**<br><br><br><br>**Magistrate Judge: Hon. Cathy Ann Bencivengo**<br>**Judge:  Hon. Larry Burns** |

Plaintiff/Counter-Defendant, MARY STRUBLE ("Plaintiff"), hereby submits her Objections to Report and Recommendation by Magistrate Judge Cathy Ann Bencivegno dated August 29, 2008, as follows:

**PLAINTIFF AGREES WITH, AND HAS NO OBJECTION TO:**

Recommendation 1:  Dismiss the District's counterclaim with prejudice in its entirety.

Recommendation 3:  Declare that Plaintiff is the prevailing party in the ALJ hearing.

Recommendation 4: Declare that Plaintiff has waived her right to appeal the ALJ's decision as to Issues 1.c, 1.d, 1.e, 2.a, 2.b, 2.c, 2.d, 2.e, 2.f, 2.g, 2.h, and 2.j. Although in light of Recommendations 1 and 3, this appears to be moot.

## PLAINTIFF RESPECTFULLY DISAGRESS WITH AND OBJECTS TO:

Recommendation 2: As to Plaintiff's complaint, STAY THE ACTION and REMAND the matter to the OAH for a determination by a hearing officer as to the following two issues: (A) did the new IEP (presented at the 2/7/08 IEP meeting) violate the IDEA and, if so, (B) was the private [unilateral parental] placement at Fusion appropriate under the Act? The bases for Plaintiff's Objection to Recommendation 2 are:

### NO FURTHER EXHAUSTION IS REQUIRED.

(1) Plaintiff has exhausted administrative remedies thorough a final Decision in OAH Case No. N2007090067. The February 7, 2008 IEP was not part of this case. The remedy being sought in this appeal is the same remedy that was sought in the OAH case, but was not granted. Therefore Plaintiff filed this appeal as an aggrieved party seeking the relief of compensatory education.

No administrative proceeding has ever been filed on the 2/7/08 IEP. Thus, there is no aggrieved party concerning this IEP. No further exhaustion of the request for remedy in OAH Case No. N2007090067 is required.

### THE STANDARD OF REVIEW REQUIRES THE COURT TO FASHION THE REMEDY.

(2) The Report and Recommendation fails to consider and uphold the standard of review, the key word of which is "discretion." The ALJ clearly abused her discretion by ordering the wrongdoer to fashion the remedy. In this case, it is especially abusive because, in the Decision the ALJ noted "Ms. Hunt's testimony also demonstrated her insensitivity to the parent's concerns." "Hunt's testimony appeared to be designed to belittle Student's parents." (Decision, footnote 13). After this comment in the Decision, and after the Decision's Conclusion of Law 30, "it does not appear that another year at Fallbrook High School is the appropriate compensatory remedy," delegating the remedy to the same people who were insensitive and belittling to parent's desire for an appropriate education for Student is unlawful. Citing other instances where other Hearing Officers and ALJs did this very thing, doesn't make it right. We don't even know in those cases whether the ALJ's delegation was challenged, as it was here.

Where an ALJ abuses her discretion, the Court has *de novo* review, including broad discretion to fashion appropriate compensatory education to meet the individualized needs of the child. Compensatory education is the remedy by operation of law where a school district has denied Student a FAPE. "The IDEA's authorization to courts to grant 'appropriate relief' encompasses the full range of equitable remedies and therefore empowers the court to order adult compensatory education if necessary to cure a violation." *Parents of Student W. v. Puyallup School District*, 31 F. 3d 1489, 1496 (9th Cir. 1994).

Student is 19 ½ years old. He was denied a FAPE throughout high school resulting in his needing specific credits in order to obtain his high school diploma. As an almost 20-year old, he will not fit academically or socially in public or non-public high school. Additionally, the curriculum in a public or non-public classroom will not be individualized to allow Student to acquire the credits he needs to graduate with a diploma.

Due to the District's failure to provide a FAPE, and failure to advise parents of Student's true graduation status, Student isn't missing complete years, for instance, Junior and Senior year credits. Although the District's calculation of the credits Student needs (Exhibits C and E of Plaintiff's Notice of Lodgment of Documents to Supplement The Administrative Record) was incorrect, it is clear that he needs specific courses, which can only be achieved in a 1:1 setting, such as Fusion.

## EVEN CALIFORNIA EDUCATION CODE EXCUSES STATE LAW REQUIREMENTS WHERE NO OTHER PLACEMENT EXISTS FOR A CHILD.

(3)     The Supremacy Clause of the United States Constitution, as well as a long line of U.S. Supreme Court cases, have given the courts broad discretion if fashioning relief, particularly when no other appropriate placement exists for a child. Specifically, "It is the further intent of the Legislature that this part does not abrogate ant rights provided to individuals with exceptional needs and their parents or guardians under the federal individuals with Disabilities Education Act." California Education Code §56000 (e) (revised February, 2007).

In an analogous case, coincidentally involving the same attorney representing the District herein, OAH Case No. N2007090403, the issue presented to OAH was whether the District and County Mental Health have the authority (or can be ordered by OAH) to place a Student in an out-of-state residential school that was "for profit" in violation of California Welfare & Institutions Code § 11460 (c)(3) and Title 2 California Code of Regulations § 60100(h), which

require in order to place seriously emotionally disturbed students in an out-of-state residential placement, the placement must be non-profit.

In a well-considered Decision, the ALJ determined that §56000(e) of the California Education Code would even apply to overrule the Welfare & Institutions Code, where the upholding the Welfare & Institutions Code mandate "would frustrate the core purpose of IDEA and the companion state law, and would prevent Student from accessing educational opportunities." (See, attached Decision on OAH Case No. N2007090403, LEGAL CONCLUSION 16).

Clearly if the intent of California Education Code § 56000(e) could overrule a different California Code, it certainly can overrule a mandate in the Education Code, under appropriate circumstances.

## ONLY FUSION CAN ALLOW STUDENT TO EARN A HIGH SCHOOL DIPLOMA IN HALF THE TIME AS ANY OTHER PROGRAM.

(4) In her Decision the ALJ ruled that Fallbrook High School was not an appropriate placement. Other non-public schools would require Student to be in a classroom and matriculate at the same pace as other students in the classroom, and to graduate in January or June.

Fusion has already demonstrated on paper, and in practice that it can provide Student with the credits needed to obtain his High School Diploma in approximately half the time the District projected. Exhibit A of Plaintiff's Notice of Lodgment of Documents to Supplement The Administrative Record, is a letter from the District dated January 3, 2008 indicating that it would take Student at least 4 semesters of a full-time, rigorous academic program to obtain his diploma. A letter from Fusion faxed on February 4, 2008 (Exhibit E of Plaintiff's Notice of Lodgment of Documents to Supplement The Administrative Record) indicates that Student could receive his diploma in half the time of a traditional school program.

## FUSION HAS ALREADY DETERMINED THAT STUDENT COULD SUCCESSFULLY OBTAIN HIS DIPLOMA AT FUSION.

(5) At the time of filing the appeal Plaintiff did not have the funding to privately place Student at Fusion. In April, 2008, Student had been out of school for almost one year. Plaintiff was able to fund Fusion for a very limited time (April, 2008-August, 2008). While there was an initial period of adjustment, Fusion had an autism consultant come in and make suggestions. Since that time, Student has been successful at earning credits needed for his high school diploma. Unfortunately, due to lack of funds, Student is unable to continue at Fusion.

Student's Fusion Progress Reports show that he is a dedicated and teachable Student (Exhibit I of Plaintiff's Notice of Lodgment of Documents to Supplement The Administrative Record). Fusion wouldn't continue to enroll Student if he couldn't be successful there. Fusion is accredited and able to award Student a high school diploma when he completes his necessary courses.

## THE $9,000 REIMBURSEMENT

(6) The issue of reimbursement for tuition paid by parent for a unilateral placement at Fusion arose after the filing of this appeal. However, it is the policy of the law to conform pleadings to proof. Plaintiff did request reimbursement as an additional remedy in the Brief. Given all of the arguments, above, at the very most, the Court should defer the reimbursement pending another, separate due process proceeding, should Plaintiff choose to file one on the 2/7/08 IEP. If so, then OAH will determine whether proper notice was given of the unilateral placement. If Plaintiff chooses not to file, then this issue has not been exhausted.

As stated in oral argument, the focus of this appeal is not to recoup the $9,000.00. It is to recoup the remainder of Student's high school education, based upon the District's denial of FAPE. The expenditure of $9,000.00 was worth it to prove that Student can be successful at Fusion. What has the District expended to explore any educational options other than Fallbrook High School?

## PLAINTIFF'S ALTERNATE SUGGESTION FOR PROPOSED COURSE OF ACTION.

Stay of this action and Remand to OAH could result in an endless, futile exercise of going to IEPs for a remedy, not receiving the remedy desired, going to due process hearing, being sent again to an IEP for a remedy, appealing to court, being remanded again—a vicious cycle which has already stood in the way of Student accessing an education.

OAH had its opportunity and abused its discretion. No further exhaustion is required, and remand to OAH would be exactly that.

This Court has the power, and, hopefully the desire to fashion a just, speedy and equitable remedy.

Plaintiff respectfully requests that the Court adopt Recommendations 1, 3, and 4, as disposition of the liability (violation of IDEA and denial of FAPE) portion of this case.

Plaintiff then respectfully requests that the Court retain this matter and bifurcate on its own motion and conduct a ½ day hearing on the issue of compensatory education. This would enable the District, Plaintiff and Fusion to testify about an appropriate remedy of compensatory education. The Court could then issue a final Decision in this case, and defer any further administrative filings on the 2/7/08 IEP to the discretion of the parties.

Dated: September 16, 2008

Respectfully submitted,

*Ellen Dowd*

Ellen Dowd, Attorney for Plaintiff/Counter-Defendant, Mary Struble

# ATTACHMENT TO PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION

BEFORE THE
OFFICE OF ADMINISTRATIVE HEARINGS
SPECIAL EDUCATION DIVSION
STATE OF CALIFORNIA

In the Matter of:

STUDENT,

          Petitioner,

v.

RIVERSIDE UNIFIED SCHOOL
DISTRICT and RIVERSIDE COUNTY
DEPARTMENT of MENTAL HEALTH,

          Respondents.

OAH CASE NO. N 2007090403

## DECISION

Administrative Law Judge Judith L. Pasewark, Office of Administrative Hearings, Special Education Division, State of California (OAH), heard this matter by written stipulation and joint statement of facts presented by the parties, along with written argument and closing briefs submitted by each party.

Heather D. McGunigle, Esq., of Disability Rights Legal Center, and Kristelia Garcia, Esq., of Quinn Emanuel Urquhart Oliver & Hedges, represented Student (Student).

Ricardo Soto, Esq., of Best Best & Krieger, represented Riverside Unified School District (District).

Sharon Watt, Esq., of Filarsky & Watt, represented Riverside County Department of Mental Health (CMH).

Student filed his first amended Request for Due Process Hearing on September 25, 2007. At the pre-hearing conference on December 7, 2007, the parties agreed to submit the matter on a written Joint Stipulation of Facts, and individual written closing arguments. The documents were received, the record closed, and matter was submitted for decision on December 31, 2007.

## ISSUE

May the educational and mental health agencies place Student in an out-of-state for-profit residential center under California Code of Regulations section 60100, subdivision (h), and California Welfare and Institutions Code section 11460, subdivision (c)(2) and (3), when no other appropriate residential placement is available to provide Student a FAPE?

## CONTENTIONS

All parties agree that Student requires a therapeutic residential placement which will meet his mental health and communication needs pursuant to his October 9, 2007 Individual Educational Plan (IEP). The District and CMH have conducted a nation-wide search and have been unable to locate an appropriate non-profit residential placement for Student.

Student contends that, as the District and CMH's searches for an appropriate non-profit residential placement have been exhausted, the District and CMH are obligated to place Student in an appropriate out-of-state for-profit residential program in order to provide Student with a free and appropriate public education (FAPE).

Both the District and CMH contend that they do not have the authority to place Student at an out-of-state for-profit residential program.

## JOINT STIPULATION OF FACTS[1]

1.  Student is 17 years old and resides with his Mother (Mother) within the District in Riverside County, California. Student's family is low-income and meets Medi-Cal eligibility requirements.

2.  Student is deaf, has impaired vision and an orthopedic condition known as legg-perthes. Student has been assessed as having borderline cognitive ability. His only effective mode of communication is American Sign Language (ASL). Student also has a long history of social and behavioral difficulties. As a result, Student is eligible for special education and related services and mental health services through AB2726/3632 under the category of emotional disturbance (ED), with a secondary disability of deafness.

3.  Student requires an educational environment in which he has the opportunity to interact with peers and adults who are fluent in ASL. Student attended the California

---

[1] The parties submitted a Stipulated Statement of Undisputed Facts and Evidence which is admitted into evidence as Exhibit 67, and incorporated herein. The stipulated facts have been consolidated and renumbered for clarity in this decision. As part of the same document, the parties stipulated to the entry of the joint Exhibits 1 through 66, which are admitted into evidence.

2

School for the Deaf, Riverside (CSDR) between January 2005 and September 2006, while a resident of the Monrovia Unified School District.

4.     CSDR does not specialize in therapeutic behavior interventions. In January 2005, CSDR terminated Student's initial review period due to his behaviors. CSDR removed Student from school as suicide prevention because Student physically harmed himself. At that time, both CSDR and Monrovia USD believed Student to be a danger to himself and others. They, therefore, placed him in home-hospital instruction.

5.     Between June 2005 and October 2005, Student's behaviors continued to escalate. Student was placed on several 72-hour psychiatric holds for which he missed numerous days of school. On one occasion, Student was hospitalized for approximately two weeks. On another occasion, he was hospitalized at least a week.

6.     Pursuant to a mental health referral, on September 14, 2006, Monrovia USD and Los Angeles County Department of Mental Health (LACDMH) met, and determined that Student had a mental disturbance for which they recommended residential placement.[2] At that time, Amy Kay, Student's ASL-fluent therapist through LACDMH's AB2726 program, recommended a residential placement at the National Deaf Academy (NDA). Ms. Kay specifically recommended that Student be placed in a residential placement at NDA due to his need for a higher level of care to address his continuing aggressive and self-injurious behaviors. Additionally, the rehabilitation of these behaviors would be unsuccessful without the ability for Student to interact with deaf peers and adults. Ms. Kay further indicated that the use of an interpreter did not provide an effective method for Student to learn due to his special needs.

7.     On August 5, 2006, NDA sent Student a letter of acceptance into its program. Monrovia USD and LACDMH, however, placed Student at Willow Creek/North Valley Non-public School. This placement failed as of March 2007, at which time both Monrovia USD and LACDMH indicated they were unable to find a residential placement for Student that could meet his mental health and communication needs. They did not pursue the residential treatment center at NDA because of its for-profit status.

8.     Student and his mother moved to the District and Riverside County in April 2007.

9.     On April 20, 2007, the District convened an IEP meeting to develop Student's educational program. The District staff, CMH staff, staff from CSDR, Student, his mother and attorney attended and participated in the IEP meeting. The IEP team changed Student's primary disability classification from emotional disturbance to deafness with social-emotional overlay. The parties agreed to this change in eligibility as CSDR required that

---

[2] As noted in Student's prior IEP, Student also required an educational environment which provided instruction in his natural language and which facilitated language development in ASL.

3

deafness be listed as a student's primary disability in order to be admitted and no other appropriate placements were offered. The IEP team offered placement at CSDR for a 60-day assessment period, individual counseling, speech and language services through CSDR, and individual counseling through CMH. The IEP team also proposed to conduct an assessment to determine Student's current functioning and to make recommendations concerning his academic programming based upon his educational needs.

10. CSDR suspended Student within its 60-day assessment period. CSDR subsequently terminated Student when, during his suspension, Student was found in the girl's dormitory following an altercation with the staff.

11. On May 23, 2007, the District convened another IEP meeting to discuss Student's removal from CSDR. The IEP team recommended Student's placement at Oak Grove Institute/Jack Weaver School (Oak Grove) in Murrieta, California, with support from a deaf interpreter pending the assessment agreed to at the April 2007 IEP meeting. CMH also proposed conducting an assessment for treatment and residential placement for Student.

12. On August 3, 2007, the District convened an IEP meeting to develop Student's annual IEP, and to review the assessments from CSDR and CMH. District staff, Oak Grove staff, CMH staff, Student's mother and attorney attended the IEP meeting. Based upon the information reviewed at the meeting, the IEP team proposed placement at Oak Grove with a signing interpreter, deaf and hard of hearing consultation and support services from the District, and individual counseling with a signing therapist through CMH. Mother and her attorney agreed to implementation of the proposed IEP, but disagreed that the offer constituted an offer of FAPE due to its lack of staff, teachers and peers who used ASL.

13. On October 9, 2007, the District convened another IEP meeting to review Student's primary disability. District staff, Oak Grove staff, CMH staff, Student's mother and attorney attended the IEP meeting. At this meeting, the IEP team once again determined Student's primary special education eligibility category as emotional disturbance with deafness as a secondary condition. The IEP team recommended placement in a residential treatment program, as recommended by CMH. Placement would remain at Oak Grove with a signing interpreter pending a residential placement search by CMH. Mother consented to the change in eligibility and the search for a residential placement. Mother also requested that Student be placed at NDA.

14. CMH made inquiries and pursued several leads to obtain a therapeutic residential placement for Student. CMH sought placements in California, Florida, Wyoming, Ohio and Illinois. All inquiries have been unsuccessful, and Student has not been accepted in any non-profit residential treatment center. At present CMH has exhausted all leads for placement of Student in a non-profit, in-state or out-of-state residential treatment center.

15. Student, his mother and attorney have identified NDA as an appropriate placement for Student. NDA, located in Mount Dora, Florida, is a residential treatment center for the treatment of deaf and hard-of-hearing children with the staff and facilities to

accommodate Student's emotional and physical disability needs. NDA also accepts students with borderline cognitive abilities. In addition, nearly all of the service providers, including teachers, therapists and psychiatrists are fluent in ASL. The residential treatment center at NDA is a privately owned limited liability corporation, and is operated on a for-profit basis. The Charter School at NDA is a California certified non-public school. All parties agree that NDA is an appropriate placement which would provide Student a FAPE.

16.     Student currently exhibits behaviors that continue to demonstrate a need for a residential treatment center. Student has missed numerous school days due to behaviors at home. As recently as December 11, 2007, Student was placed in an emergency psychiatric hold because of uncontrollable emotions and violence to himself and others.

## LEGAL CONCLUSIONS

1.     Under *Schaffer v. Weast* (2005) 546 U.S. 49 [126 S.Ct. 528], the party who files the request for due process has the burden of persuasion at the due process hearing. Student filed this due process request and bears the burden of persuasion.

2.     A child with a disability has the right to a free appropriate public education (FAPE) under the Individuals with Disabilities Education Act (IDEA or the Act) and California law. (20 U.S.C. § 1412(a)(1)(A); Ed. Code, § 56000.) The Individuals with Disabilities Education Improvement Act of 2004 (IDEIA), effective July 1, 2005, amended and reauthorized the IDEA. The California Education Code was amended, effective October 7, 2005, in response to the IDEIA. Special education is defined as specially designed instruction provided at no cost to parents and calculated to meet the unique needs of a child with a disability. (20 U.S.C. § 1401(29); Ed. Code, § 56031.)

3.     In *Board of Education of the Hendrick Hudson Central School District, et. al. v. Rowley* (1982) 458 U.S. 176, 201 [102 S.Ct. 3034, 73 L. Ed.2d 690] (*Rowley*), the Supreme Court held that "the 'basic floor of opportunity' provided by the IDEA consists of access to specialized instruction and related services which are individually designed to provide educational benefit to a child with special needs." *Rowley* expressly rejected an interpretation of the IDEA that would require a school district to "maximize the potential" of each special needs child "commensurate with the opportunity provided" to typically developing peers. (*Id.* at p. 200.) Instead, *Rowley* interpreted the FAPE requirement of the IDEA as being met when a child receives access to an education that is "sufficient to confer some educational benefit" upon the child. (*Id.* at pp. 200, 203-204.) The Court concluded that the standard for determining whether a local educational agency's provision of services substantively provided a FAPE involves a determination of three factors: (1) were the services designed to address the student's unique needs, (2) were the services calculated to provide educational benefit to the student, and (3) did the services conform to the IEP. (*Id.* at p.176; *Gregory K. v. Longview Sch. Dist.* (9th Cir. 1987) 811 F. 2d 1307, 1314.) Although the IDEA does not require that a student be provided with the best available education or services or that the services maximize each child's potential, the "basic floor of opportunity"

5

of specialized instruction and related services must be individually designed to provide some educational benefit to the child. De minimus benefit or trivial advancement is insufficient to satisfy the *Rowley* standard of "some" benefit. (*Walczak v. Florida Union Free School District* (2d Cir. 1998) 142 F.3d at 130.)

4. Under California law, "special education" is defined as specially designed instruction, provided at no cost to parents, that meets the unique needs of the child. (Ed. Code, § 56031.) "Related services" include transportation and other developmental, corrective, and supportive services as may be required to assist a child to benefit from special education. State law refers to related services as "designated instruction and services" (DIS) and, like federal law, provides that DIS services shall be provided "when the instruction and services are necessary for the pupil to benefit educationally from his or her instructional program." (Ed. Code, § 56363, subd. (a).) Included in the list of possible related services are psychological services other than for assessment and development of the IEP, parent counseling and training, health and nursing services, and counseling and guidance. (Ed. Code, § 56363, subd. (b).) Further, if placement in a public or private residential program is necessary to provide special education and related services to a child with a disability, the program, including non-medical care and room and board, must be at no cost to the parent of the child. (34 C.F.R § 300.104.) Thus, the therapeutic residential placement and services that Student requests are related services/DIS that must be provided if they are necessary for Student to benefit from special education. (20 U.S.C. § 1401(22); Ed. Code, § 56363, subd. (a).) Failure to provide such services may result in a denial of a FAPE.

5. A "local educational agency" is generally responsible for providing a FAPE to those students with disabilities residing within its jurisdictional boundaries. (Ed. Code, § 48200.)

6. Federal law provides that a local educational agency is not required to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility. (20 U.S.C. § 1412(a)(10)(C)(i).)

7. Under California law, a residential placement for a student with a disability who is seriously emotionally disturbed may be made outside of California only when no in-state facility can meet the student's needs and only when the requirements of subsections (d) and (e) have been met. (Cal. Code Regs., tit. 2, § 60100, subd. (h).) An out-of-state placement shall be made only in residential programs that meet the requirements of Welfare and Institutions Code sections 11460, subdivisions (c)(2) through (c)(3).

8. When a school district denies a child with a disability a FAPE, the child is entitled to relief that is "appropriate" in light of the purposes of the IDEA. (*School Comm. of the Town of Burlington v. Dept. of Educ.* (1985) 471 U.S. 359, 374 [105 S.Ct. 1996].) Based on the principle set forth in *Burlington*, federal courts have held that compensatory education is a form of equitable relief which may be granted for the denial of appropriate

6

special education services to help overcome lost educational opportunity. (*See e.g. Parents of Student W. v. Puyallup Sch. Dist.* (9th Cir. 1994) 31 F.3d 1489, 1496.) The purpose of compensatory education is to "ensure that the student is appropriately educated within the meaning of the IDEA." (*Id.* at p. 1497.) The ruling in *Burlington* is not so narrow as to permit reimbursement only when the placement or services chosen by the parent are found to be the exact proper placement or services required under the IDEA. (*Alamo Heights Independent Sch. Dist. v. State Bd. of Educ.*(6th Cir. 1986) 790 F.2d 1153, 1161.) However, the parents' placement still must meet certain basic requirement of the IDEA, such as the requirement that the placement address the child's needs and provide him educational benefit. (*Florence County Sch. Dist. Four v. Carter* (1993) 510 U.S. 7, 13-14 [114 S.Ct. 361].)

*Determination of Issues*

9. In summary, based upon Factual Findings 2, 3, and 6 through 16, all parties agree that the placement in the day program at Oak Grove NPS with an interpreter cannot meet Student's unique educational needs because it does not sufficiently address his mental health and communication needs and does not comport with his current IEP. All parties agree that Student requires a therapeutic residential placement in order to benefit from his education program. Further, all parties agree that the nationwide search by the District and CMH for an appropriate non-profit residential placement with a capacity to serve deaf students has been exhausted, and Student remains without a residential placement. Lastly, all parties agree that the National Deaf Academy can meet both Student's mental health and communication needs. Further, the charter school at NDA is a California certified NPS.

10. The District and CMH rely upon Legal Conclusion 7 to support their contentions that they are prohibited from placing Student in an out-of-state for-profit residential placement, even if it represents the only means of providing Student with a FAPE.

11. As administrative law precedent, CMH cites *Yucaipa-Calimesa Joint Unified School District and San Bernardino County Department of Behavioral Health (Yucaipa)*, OAH Case No. N2005070683 (2005), which determined that the District and County Mental Health were statutorily prohibited from funding an out-of-state for-profit placement. The *Yucaipa* case can be distinguished from the one at hand. Clearly, the ruling in *Yucaipa*, emphasized that the regulation language used the mandatory term "shall," and consequently there was an absolute prohibition from funding a for-profit placement. The ALJ, however, did not face a resulting denial of FAPE for Student. In *Yucaipa*, several non-profit placement options were suggested, including residential placement in California, however, the parent would not consider any placement other than the out-of-state for-profit placement. In denying Student's requested for-profit placement, the ALJ ordered that the parties continue to engage in the IEP process and diligently pursue alternate placements. In the current matter, however, pursuant to Factual Findings 12 through 14, CMH has conducted an extensive multi-state search, and all other placement possibilities for Student have been exhausted. Pursuant to Factual Finding 15, NDA is the only therapeutic residential placement remaining, capable of providing a FAPE for Student.

7

12.     "When Congress passed in 1975 the statute now known as the Individuals with Disabilities Act (IDEA or Act), it sought primarily to make public education available to handicapped children. Indeed, Congress specifically declared that the Act was intended to assure that all children with disabilities have available to them. . . appropriate public education and related services designed to meet their unique needs, to assure the rights of children with disabilities and their parents or guardians are protected. . . and to assess and assure the effectiveness of efforts to educate children with disabilities." (*Hacienda La Puente Unified School District v. Honig* (1992) 976 F.2d 487, 490.) The Court further noted that the United States Supreme Court has observed that "in responding to these programs, Congress did not content itself with passage of a simple funding statute...Instead, the IDEA confers upon disabled students an enforceable substantive right to public education in participating States, and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act." (*Id.* at p. 491.)

13.     California maintains a policy of complying with IDEA requirements in the Education Codes, sections 56000, et seq. With regard to the special education portion of the Education Code, the Legislature intended, in relevant part, that every disabled child receive a FAPE. Specifically, "It is the further intent of the Legislature to ensure that all individuals with exceptional needs are provided their rights to appropriate programs and services which are designed to meet their unique needs under the Individuals with Disabilities Education Act." (Ed. Code, § 56000.)

14.     California case law explains further, "although the Education Code does not explicitly set forth its overall purpose, the code's primary aim is to benefit students, and in interpreting legislation dealing with our educational systems, it must be remembered that the fundamental purpose of such legislation is the welfare of the children." (*Katz v. Los Gatos-Saratoga Joint Union High School Dist.* (2004) 117 Cal.App. 4th 47, 63.)

15.     Pursuant to Legal Conclusion 6, a district is not required to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if the district made a free appropriate public education available to the child. All parties concur, in Factual Findings 12 through 15, that the District has been unable to provide a FAPE to Student because no appropriate placement exists except in an out-of-state for-profit residential program.

16.     Assuming the District's interpretation of section 60100, subdivision (h) of Title 2 of the California Code of Regulations is correct, it is inconsistent with the federal statutory and regulatory law by which California has chosen to abide. California education law itself mandates a contrary response to Welfare and Institutions Code section 11460, subdivision (c)(3), where no other placement exists for a child. Specifically, "It is the further intent of the Legislature that this part does not abrogate any rights provided to individuals with exceptional needs and their parents or guardians under the federal Individuals with Disabilities Education Act." (Ed. Code, § 56000, subd. (e) (Feb. 2007).) A contrary result

would frustrate the core purpose of the IDEA and the companion state law, and would prevent Student from accessing educational opportunities.[3]

17.     Regardless of whether the District and CMH properly interpreted Legal Conclusion 7, Student has ultimately been denied a FAPE since May 23, 2007, when he was terminated from attending CSDR, as indicated in Factual Findings 10 through 16. Pursuant to Factual Findings 6 and 16, Student's need for therapeutic residential placement with ASL services continues. As a result of this denial of FAPE, Student is entitled to compensatory education consisting of immediate placement at the National Deaf Academy through the 2008-2009 school years. The obligation for this compensatory education shall terminate forthwith in the event Student voluntarily terminates his attendance at NDA after his 18th birthday, or Student's placement is terminated by NDA.

## ORDER

The District has denied Student a free appropriate public education as of May 23, 2007. The District and CMH are to provide Student with compensatory education consisting of immediate placement at the National Deaf Academy and through the 2008-2009 school year. The obligation for this compensatory education shall terminate forthwith in the event Student voluntarily terminates his attendance at NDA after his 18th birthday, or Student's placement is terminated by NDA.

## PREVAILING PARTY

Pursuant to California Education Code section 56507, subdivision (d), the hearing decision must indicate the extent to which each party has prevailed on each issue heard and decided. Student has prevailed on the single issue presented in this case.

---

[3] Further, there appears to be no argument that had Mother completely rejected the District's IEP offer, and privately placed Student at NDA, she would be entitled to reimbursement of her costs from the District, if determined that the District's offer of placement did not constitute a FAPE. By all accounts, Student's low income status prevented placement at NDA, and therefore precluded Student from receiving a FAPE via reimbursement by the District.

RIGHT TO APPEAL THIS DECISION

The parties to this case have the right to appeal this Decision to a court of competent jurisdiction. If an appeal is made, it must be made within 90 days of receipt of this Decision. (Ed. Code, § 56505, subd. (k).)

Dated: January 15, 2008

*Judith L. Pasewark*
JUDITH L. PASEWARK
Administrative Law Judge
Special Education Division
Office of Administrative Hearings

10