1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11 MARY STRUBLE, As Conservator for C.S.,                    CASE NO. 07cv2328-LAB (CAB)

12                                              Plaintiff,    **ORDER ADOPTING REPORT &**
                    vs.                                       **RECOMMENDATION AS**
13                                                            **MODIFIED**

14 FALLBROOK UNION HIGH SCHOOL
   DISTRICT, a Local Educational Agency,
15
                                            Defendant.
16

17          The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*,

18 provides federal funding to states "to ensure that all children with disabilities have available

19 to them a free appropriate public education." 20 U.S.C. § 1400(d).   IDEA requires states

20 who receive federal funding to provide disabled children with a "free appropriate public

21 education" (FAPE). 20 U.S.C. §§ 1401(8) & 1412(a)(1).  A school district is required to offer

22 disabled students an appropriately-designed FAPE that provides a meaningful benefit. *J.W.*

23 ex rel. *J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3 431, 432–33 (9th Cir. 2010). The state,

24 through the school districts, and a student's parents must cooperatively develop an individual

25 education program (IEP) for each qualified child.  20 U.S.C. § 1414(d).

26          If the parents are unsatisfied with the IEP offered by the state, parents may request

27 an impartial due process hearing through the state educational agency to review the IEP and

28 order a more appropriate educational program.  20 U.S.C. § 1415(f).  If the parents, or the

school district, objects to the results of the agency hearing, then—and only then—they may appeal the case to a State court or U.S. district court. 20 U.S.C. § 1415(i)(2). That court must review the administrative record, hear additional evidence upon request, and "shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B)(iii). The parties may not bring their case before the courts until they exhaust these administrative procedures. *Id.*

This case consists of a complaint filed by Plaintiff Mary Struble, the conservator and mother of a young man ("C.S."), who alleges that the Defendant failed to provide a FAPE and seeking that C.S. be placed at the Fusion Learning Center , a nonpublic school which has not been certified by the state as an appropriate school for children with disabilities. The complaint seeks to modify the *remedy* prescribed by the administrative law judge (ALJ) who conducted an administrative due process hearing and agreed with Struble that the defendant failed to provide C.S. a FAPE. After she filed the complaint, Struble placed her son with Fusion, but does not seek reimbursement of those costs in this complaint. The complaint doesn't say what whether C.S. continued at Fusion, or what his status is now, but the Court assumes the parents continue to seek compensatory education for him. In addition, the Defendant, Fallbrook Union High School District, filed a counterclaim seeking to reverse the decision by the ALJ.

## I.    Facts and Procedural History

The Court referred this case to Magistrate Judge Cathy Bencivengo, who issued her report and recommendation ("R&R"), thoroughly canvassing the facts and procedural history. The Court **ADOPTS** the R&R's findings, which in summary establish the following. C.S. qualifies for special education because he is autistic. He attended Fallbrook High School from mid-2004 until approximately May 2007. In May 2007, about a month before the end of his senior year, C.S.'s parents pulled him out of school based on the recommendation of C.S.'s psychiatrist. Just before May 2007, Struble first learned that the  Student was not  on a high school "diploma" track,  but rather on a  "certificate of

/ / /

1    completion" track.  She claims the District staff never informed her that C.S. would not

2    receive a diploma even if he successfully completed all his classes.

3         In June 2007, the parties met to discuss C.S.'s IEP, during which the parties quarreled

4    over whether Struble knew that C.S. was on a "certificate of completion" track.  At the

5    meeting, Defendant offered C.S. two options: (1) to return to Fallbrook High School as a

6    "super senior," or (2) to attend the District's transition program, located on the Fallbrook High

7    School campus.  Neither option permitted C.S. to graduate with a diploma, and "the

8    discussion focused around why C.S. was not currently capable of attaining a diploma." (Doc.

9    No. 1, *ALJ Decision*, at 14).

10        Unsatisfied with this result, Plaintiff filed a due process complaint against the District

11   with the California Office of Administrative Hearing, Special Education Division ("OAH"),

12   alleging that Defendant failed to provide C.S. with a FAPE.  The complaint accused the

13   District of fifteen specific failures over the course of C.S.'s junior and senior years.  On

14   November 20, 2007, the ALJ ruled in Plaintiff's favor as to three specific allegations: (1)

15   failure to provide parents with options for C.S. graduation while C.S. was in the eleventh

16   grade; (2) failure to write any handwriting goals while C.S. was in the eleventh grade; and

17   (3) failure to provide parents or C.S. with options for graduation, and/or predetermination of

18   placement while C.S. was in the twelfth grade.  The ALJ ruled in the District's favor on the

19   remaining twelve issues.  Even so, due to the District's failure to provide a FAPE to C.S.,

20   some form of compensatory education was appropriate.  The ALJ ordered the parties to

21   meet and discuss options which permitted C.S. to work toward a diploma, including

22   placement at a nonpublic school.  The order specifically permitted the parties to file a new

23   impartial due process complaint regarding any proposal made at that meeting.  Struble

24   considered this remedy unacceptable because she hoped to place C.S. at Fusion and have

25   the District pay the tuition.  By this time, the parties had lost rapport with one another and

26   Struble believed the District had essentially abandoned any hope of C.S. graduating high

27   school with a diploma.

28   / / /

1    On December 13, 2007, Plaintiff filed this complaint in the District Court.  The parties

2    then met on February 7, 2008, as ordered by the ALJ, to discuss a new IEP.  The District

3    offered to allow C.S. to participate in the high school curriculum leading to a diploma, with

4    a proposed graduation date of June 10, 2011.  Plaintiff rejected this offer, requesting that the

5    District reimburse the family for the past and future costs of sending C.S. to Fusion.

6    Defendant refused because, according to the District, Fusion could not provide a FAPE

7    because Fusion was not certified by the state.  It is not clear whether C.S. continued his

8    education at Fusion.

9    The District also filed a counterclaim, essentially challenging the ALJ's findings that

10   the District had failed to provide a FAPE to C.S..  The R&R recommends that the Court:

11   1.    Dismiss the District's counterclaim with prejudice in its entirety;

12   2.    As to the complaint, stay the action and remand the matter to the OAH for a

13         final determination by a hearing officer as to the following two issues:  (A)

14         whether the new IEP (presented at the 2/7/08 IEP meeting) violated the IDEA

15         and, if so (B) whether the private [unilateral parent] placement at Fusion was

16         appropriate under the Act?;

17   3.    Declare that Struble was the prevailing party in the ALJ hearing; and

18   4.    Declare that Struble  waived her right to appeal the ALJ's decision as to twelve

19         of the fifteen issues contained in the original complaint.

20   Both parties object to the R&R.  Struble objects only to the second recommendation,

21   and requests that this Court hold a hearing and make a final determination on the case,

22   rather than sending the case back to the OAH to start again.  The District objects to the first

23   and third recommendations, asking the Court to overturn the ALJ's findings and declare the

24   District the prevailing party on all issues.  In addition, the District objects to the way the R&R

25   frames the issues for review in the second recommendation.  Neither party objects to the

26   fourth recommendation.

27   / / /

28   / / /

1    **II.    Standard of Review**

2    ***A.    De Novo Review of the R&R***

3           A district court has jurisdiction to review a Magistrate Judge's report and

4    recommendation on dispositive matters.  Fed. R. Civ. P. 72(b).  "The district judge must

5    determine de novo any part of the magistrate judge's disposition that has been properly

6    objected to."  Rule 72(b)(3).  "A judge of the court may accept, reject, or modify, in whole or

7    in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. §

8    636(b)(1)(C).  The Court reviews *de novo* those portions of the R&R to which specific written

9    objection is made.  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).   In

10   this case, both parties made specific objections, so the Court reviews those issues de novo.

11   ***B.    Review of the ALJ Opinion***

12          When reviewing a complaint under the IDEA, "the court shall receive the records of

13   the administrative proceedings; shall hear additional evidence at the request of a party; and

14   basing its decision on the preponderance of the evidence, shall grant such relief as the court

15   determines is appropriate."  20 U.S.C. § 1415(2)(C).  A full de novo review is inappropriate.

16   *J.W.*, 626 F.3d at 438.  This is "an unusual formulation of the standard for district court

17   review of an administrative decision."  *Capistrano Unified School District v. Wartenberg*, 59

18   F.3d 884, 890 (9th Cir. 1995).  The statutory requirement that the district court should

19   "receive the records of the administrative proceedings" is not a simple matter of reading the

20   record; rather, the Court must give the administrative record "due weight," which is to say

21   some amount of deference  *Bd. of Educ. of the Hendrick Hudson Central Sch. Dist. v.*

22   *Rowley*, 458 U.S. 176, 206 (1982).  How much deference is a matter of discretion for the

23   courts.  *Gregory K. v. Longview Sch. Distr.*, 811 F.2d 1307, 1311 (9th Cir. 1987).   The

24   amount of deference accorded the hearing officer's finding increases where they are

25   "thorough and careful."  *A.M.* ex rel. *Marshall v. Monrovia Unified Sch. Dist.*, 627 F.3d 773,

26   778 (2010) (citation omitted).  In the end the Court must "read the administrative record,

27   consider [any] new evidence, and make an independent judgment based on a

28   / / /

1  preponderance of evidence and giving due weight to the hearing officer's determinations."

2  *Wartenberg*, 59 F.3d at 892.

3  **III.    Discussion**

4  ***A.    The District's Objections to the R&R***

5  The District objects (1) to the finding that the ALJ thoroughly evaluated all of the

6  evidence and carefully assessed the credibility of all of the witnesses, including Struble; (2)

7  to the R&R's failure to reverse the ALJ's findings and conclusions on the three issues on

8  which Struble originally prevailed; (3) to the finding that Struble was the prevailing party at

9  the hearing before the ALJ; and (4) to the way the R&R frames the issues to be decided

10  during a possible future administrative due process hearing.

11  *1.    The ALJ thoroughly evaluated the evidence in the record and carefully assessed the*

12  *credibility of all the witness.*

13  The District argues that the ALJ did not thoroughly evaluate the evidence or reach a

14  careful decision and points to four pieces of evidence the ALJ allegedly failed to consider.

15  First, the District states that the "ALJ took great pains not to allude to the fact that [C.S.] has

16  been conserved and ignored the implications of this fact." (Doc. No. 46 at 4.)  It argues that

17  because Struble was C.S.'s *conservator*, and not just his parent, it is much more likely that

18  Struble understood C.S. was not on a diploma track.  This is because conservators must

19  prove they are responsible and, by implication, they are more likely to pay attention to the

20  difference between a certificate of achievement and a diploma.  (Doc. No. 46 at 5.)  This

21  objection is rooted in the ALJ's decision not to admit a declaration of the District's Director

22  of Special Education into evidence.  The District does not now argue that the ALJ's decision

23  not to admit the evidence was incorrect, but rather that the ALJ was on notice that the District

24  believed Struble's role as conservator was relevant.  Therefore, the argument goes, the

25  ALJ's failure to consider this evidence in the decision shows the ALJ did not carefully

26  consider the evidence.

27  The Court is not convinced that this shows carelessness.  The ALJ published a

28  38-page decision which included 158 factual findings.  These findings lay out not only the

1   evidence presented but also the ALJ's thought process while weighing the evidence.  (For
2   examples of the ALJ weighing evidence *see, e.g.*, Doc. No. 1, ¶ 28–29, 47–53, 65, 83–85.)
3   In cases, like this one, where there is an extensive record and testimony, the ALJ is not
4   required to mentioned every detail when discussing the record, especially details which are
5   not particularly relevant.  The District does not elaborate on why Struble's conservatorship
6   is relevant, other than to mention that "the implications" are relevant to "the issues of whether
7   Plaintiff understood that her son was not diploma bound."  (Doc. No. 46 at 5.)  The Court
8   does not find this detail helpful because the connection between Struble's conservatorship
9   and her knowledge of the difference between a "diploma" track and "certificate of
10  achievement" track is tenuous.  The ALJ's failure to discuss the conservatorship does not
11  show that the ALJ was less than thorough and careful.

12       The second piece of evidence are "results of [two] tests of achievement that were
13  administered to [C.S.] in the spring of his senior year by the District and by an independent
14  evaluator chosen by parents in the summer following his senior year."  (Doc. No. 46 at 6.)
15  The test results showed that C.S. struggled in both mathematics and reading.  The District
16  uses this evidence as proof that C.S. could not graduate with a diploma and that the ALJ's
17  failure to mention this evidence shows carelessness.  This argument fails because the ALJ
18  does discuss both tests (¶¶ 102, 123).  In addition, the decision canvasses approximately
19  four years of progress tests and IEP Team evaluations, noting at least 10 tests and progress
20  reports (¶¶ 14, 19, 26, 27, 31, 36, 56, 102, 119, 123) stretching through C.S.'s senior year.
21  Even though the ALJ did not focus on these two achievement tests it does not show the ALJ
22  was careless.  On the contrary, it suggests that the ALJ considered all the evidence and
23  made her decision based on the evidence she found most compelling.  The Court finds that
24  the ALJ's decision was both thorough and careful as she discussed all the evidence of C.S.'s
25  progress.

26       The District also objected that: "the ALJ accepted Plaintiff's testimony that no one
27  explained to her that [C.S.] would need to take the state's standardized achievement tests
28  in ninth grade in order to obtain a high school diploma.  No evidence other than Plaintiff's

1  testimony ever submitted at the hearing that students are required to pass California's
2  standardized achievement tests in ninth grade in order to obtain a high school diploma and,
3  in fact, this is not correct.  Instead, students must pass the [California High School Exit
4  Examination.]" (Doc. No. 46 at 6–7 (citations removed).)  This argument is puzzling.  The
5  ALJ was merely summarizing the evidence on whether the parents knew about the diploma
6  track, which included Struble's testimony.  The fact that Struble, at the time of the hearing,
7  thought that the California standardized tests were part of the diploma requirements does
8  not suggest that the ALJ was careless.  In fact, it is evidence that the District did not
9  adequately communicate the state diploma requirements, suggesting that the District failed
10 to make the distinction between the "certificate of achievement" track and "diploma" track
11 clear, just as the ALJ concluded.  (Doc. No. 1 at 32, ¶ 10–12.)

12        Finally, the District asserts that the ALJ failed to carefully assess Struble's credibility.
13 The ALJ took great pains to listen carefully to Struble's testimony and weigh it against other
14 contrary testimony.  (Doc. No. 1 at p. 5, ¶ 11; p. 10 ¶ 34, p. 12, ¶ 47.)  This case contains
15 evidence on both sides of every issue, which is why the ALJ thought it was a close call.
16 (Doc. No. 1 at 13, ¶ 53 (stating that the evidence only tipped the balance toward the
17 Plaintiff).)  Differences of opinion are common in this type of case, *Marcotte v. Palos Verdes*
18 *Peninsula Unified Sch. Dist.*, 2009 WL 1873024 at 13 (C.D.Cal., June 29, 2009), and the fact
19 that the ALJ *could* have reached a different outcome doesn't show her evaluation of the
20 testimony was careless.

21 *2.     The ALJ's findings of fact and conclusions of law in favor of Plaintiff should stand.*

22        Defendant next objects to the R&R's failure to reverse the ALJ's findings and
23 conclusions on the three issues on which the Plaintiff originally prevailed.  The R&R
24 responds to this argument:

25        As set forth previously, the amount of deference given to the administrative
        findings is within the court's discretion and increases when the findings are
26       "thorough and careful."  *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d
        at 891.  A court should give substantial weight to the hearing officer's decision
27       if the court finds that the decision was careful, impartial, and sensitive to the
        complexities of the issues presented.  *Ojai Unified Sch. Dist. v. Jackson*, 4
28       F.3d [1467,] 1472 [(9th Cir. 1993)].

1
2
3
4
5

Here, the ALJ appears to have carefully considered all of the evidence presented by the parties and has set forth her findings and conclusions in a thorough and well-reasoned 38-page opinion.  While there may have been evidence presented that arguably contradicted the plaintiff's testimony, the ALJ appears to have thoroughly evaluated all of the evidence, and carefully assessed the credibility of all of the witnesses, including plaintiff.  As a result, this Court declines to reverse the findings and conclusions of the ALJ [on the issues favoring the Plaintiff] and recommends that the counterclaim be dismissed with prejudice in its entirety.

6

(Doc. No. 44 at 21–22.)

7   The Court agrees.  As discussed above, the ALJ was careful and thorough.  The

8   Court places great weigh in her conclusions and findings and the Court will defer to those

9   the ALJ's decision on those issues.

10   *3.     The Plaintiff was the prevailing party.*

11   Plaintiffs originally argued that the District had failed to provide C.S. with a FAPE

12   based on 15 issues.  The ALJ eventually found for the District on 12 of those issues, but

13   found for the Plaintiff on 3 issues.  However, as discussed, the ALJ's findings of fact and

14   conclusions of law on these issues were correct.   Therefore, the Plaintiff should be

15   considered the prevailing party.  The Court adopts the R&R's explanation and reasoning:

16
17
18
19
20
21
22
23

A party is "prevailing" where it can "point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989), quoted in *Kletzelman v. Capistrano Unified Sch. Dist.*, 91 F.3d 68, 71 (9th Cir. 1996); see also *Tex. State Teachers Ass'n*, 489 U.S. at 792–93 ("The touchstone of the prevailing party inquiry must be the material alternation of the legal relations of the parties. . . .").  "[T]he prevailing party inquiry does not turn on the magnitude of the relief obtained." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992).  Rather, a "prevailing party" need only "obtain an enforceable judgment against the defendant from whom fees are sought."  *Id.* at 113–14. Accordingly, a prevailing party need not succeed on all issues, but only on "any significant issue."  *Parents of Student W.*, 31 F.3d at 1498 (internal quotation marks omitted).  Moreover, a prevailing party need not achieve all of the relief claimed, but merely "some of the benefit the parties sought in brining the suit." *Id*. (international quotation marks omitted).

24
25
26
27

Here, plaintiff was the prevailing part at the ALJ hearing, because plaintiff was afforded significant relief that materially altered the relationship of the parties. Student went from a situation where he was only provided with a "Certificate of completion" option, to an order that the IEP team devise a plan to put Student on the "diploma" track.  The fact that the ALJ ruled in favor of the District on other issues does not change the fact that plaintiff prevailed at the ALJ hearing.

28   (Doc. No. 44 at 22–23.)

1    *4.      The District's objections to the way the R&R framed the issues are sustained.*

2          The District's final objection is about how the R&R frames the issues to be decided

3    at a possible future due process hearing.  The R&R frames one issue by asking "did the new

4    IEP (presented at the 2-7-08 IEP meeting) violate the IDEA."  The District urges the Court

5    to re-frame the issue as "whether the February 7, 2008 IEP placement is appropriate [under

6    the IDEA]."  (Doc. No. 46, p. 11.)  Plaintiff did not object to the way Defendant framed the

7    issue.  The District argues that its way of framing the issue is more narrowly tailored to the

8    facts, and the Court agrees.  In addition, the District argues that characterizing the IEP

9    meeting as merely "presenting" the parents with a new IEP suggests that the plan violated

10   the IDEA because school districts are required to develop an IEP with the input of the

11   parents.  The R&R is **MODIFIED** in this way to re-frame the second recommendation.

12   **B.     Struble's Objections to the R&R**

13         Struble makes several objections aimed at the R&R's recommendation to remand the

14   case to the OAH to determine whether the new IEP (discussed at the Feb. 7, 2008 meeting)

15   violated the IDEA and, if so, whether the parent's decision to place C.S. at Fusion was

16   appropriate.  Struble asks the Court, as an alternative, to hold a hearing on the issues and

17   make a final ruling.

18   *1.      The ALJ did not violate the IDEA by delegating the award of compensatory education*

19           *to the IEP team.*

20         Struble's first objection is that the remedy the ALJ ordered was illegal.  Struble argues

21   that by ordering the parties to meet again and develop a new IEP which allowed C.S. to

22   graduate with a diploma, rather than ordering a placement for C.S., the ALJ effectively

23   delegated her authority to the District, which is prohibited by statute.  The IDEA due process

24   hearing "may not be conducted by an employee of the State educational agency or the local

25   educational agency involved in the education or care of the child."  20 U.S.C. § 1415(f)(3).

26   The ALJ may not delegate its authority to craft a remedy to the very employees who violated

27   the IDEA in the first place.  *Reid v. District of Columbia*, 401 F.3d 516, 526 (D.C. Cir. 2005)

28   ("Under the statute, the hearing officer may not delegate his authority to a group that

1   includes an individual specifically barred from performing the hearing officer's functions.")

2   As the R&R explains, *Reid* is distinguishable:

> In *Reid*, a hearing officer concluded that the school district had denied the student a FAPE, and ordered 810 hours of compensatory education. The hearing officer also empowered the student's IEP team to "direct [ ]" implementation of the award. "The services are to be reduced or discontinued," he added, "on the decision of the IEP team that Minor no longer needs or is not benefitting from this compensatory education. The team's decision that [Minor] no longer needs or is not benefitting from this award of compensatory education services will terminate this award. . . ." 401 F.3d at 520. . . .

> Here, however, the ALJ's decision does not violate *Reid*. The ALJ's decision does not allow the IEP team to "reduce or discontinue," id., the compensatory education award. Rather, the ALJ is specific that the District was to hold another IEP meeting to devise a placement that would permit the Student to work toward a diploma.

11  (R&R at 19.) The reason the ALJ ordered a new meeting, rather than placing C.S. in an

12  appropriate school was because the ALJ did not have sufficient evidence to make such a

13  placement. (Doc. No. 1 at p. 36, ¶ 31–32.) The ALJ's remedy was appropriate because it

14  did not give the IEP team authority to change or reduce the remedy in any way. Rather, the

15  remedy forced the parties to develop a new IEP which gave the Plaintiff what she wanted—a

16  path for C.S. toward a diploma.

17  *2.    Prospective placement into Fusion is not an available remedy.*

18      Struble asks the Court to hold a hearing on the issue of compensatory education

19  because she seeks to have C.S. placed at Fusion. (Doc. No. 45 at 6.) First, Struble argues

20  that she need not exhaust her claims further to receive relief. The Court agrees that on the

21  question whether to order C.S. to be placed at Fusion, Struble has exhausted her claims.

22  The District argues that further exhaustion is required, but its argument addresses whether

23  the District must reimburse Struble for tuition costs she voluntarily made to Fusion which, in

24  turn, depends on whether the District failed to provide a FAPE at the February 7, 2008 IEP

25  team meeting. (Doc. No. 49 at 2–3.) The parties agree, however, that reimbursement is not

26  at issue in this case (*see id.* and Doc. No. 45 at 5), so the District's argument is beside the

27  point.

28  / / /

1    Second, Struble argues that the Court may (or perhaps must) place C.S. at Fusion.

2    The R&R goes into great detail discussing whether prospective placement at a non-certified

3    private school is permitted:

4        Under 20 U.S.C. § 1412(a)(10), a State is eligible for assistance under the
         IDEA if the State submits a plan that provides assurances to the Secretary that
5        the State has in effect policies and procedures to ensure that the State meets
         certain conditions with regard to the placement of children in private schools.
6

7    With regard to children placed in, or referred to, private schools by public agencies, the IDEA

8    provides:

9
         (B) Children placed in, or referred to, private schools by public agencies
10
             (i) In general
11
             Children with disabilities in private schools and facilities
12           are provided special education and related services, in
             accordance with an individualized education program, at
13           no cost to their parents, if such children are placed in, or
             referred to, such schools or facilities by the State or
14           appropriate local educational agency as the means of
             carrying out the requirements of this subchapter or any
15           other applicable law requiring the provision of special
             education and related services to all children with
16           disabilities within such State.

17           (ii) Standards

18           In all cases described in clause (i), the State educational
             agency shall determine whether such schools and
19           facilities meet standards that apply to State educational
             agencies and local educational agencies and that
20           children so served have all the rights the children would
             have if served by such agencies.
21

22   20 U.S.C. § 1412(a)(10)(B) (emphasis added).

23       The IDEA defines a FAPE as follows:

24           The term "free appropriate public education" means special
             education relates services that
25
             (A) have been provided at public expense, under public
26           supervision and direction, and without charge;

27           (B)  meet the standards of the State educational agency;

28           (C) include an appropriate preschool, elementary school, or
             secondary school education in the State involved; and

1
        (D) are provided in conformity with the individualized education
        program required under section 1414(d) of this title

2

3  20 U.S.C. § 1401 (9) (emphasis added).

4       Finally, the California Education Code provides:

5        (a) A hearing officer may not render a decision that results in the
        placement of an individual with exceptional needs in a nonpublic,
6       nonsectarian school, or that results in a service for an individual
       with exceptional needs provided by a nonpublic, nonsectarian
7       agency, if the school or agency has not been certified pursuant
       to Section 56366.1.

8

9        (b) A hearing officer shall consider Sections 56365, 56366, and
       56366.1 during a due process hearing concerning an issue of
       placement of an individual with exceptional needs in a nonpublic,
10      nonsectarian school, or services for an individual with
       exceptional needs provided by a nonpublic, nonsectarian
11      agency.

12  Cal. Education Code § 56505.2 (emphasis added).

13      These authorities make clear that school districts and hearing officers in California

14  cannot place students prospectively in non-certified nonpublic schools.  But if a parent has

15  unilaterally placed a student in a nonpublic school and is seeking retroactive reimbursement

16  (as opposed to prospective placement), then such reimbursement may be awarded under

17  certain circumstances even if the nonpublic school does not meet state certification

18  requirements.

19      Struble objects and argues that whether or not the ALJ had the authority to grant relief

20  the Court has wide authority to craft an equitable remedy.  The district court has the power

21  to "grant such relief at [it] determines is appropriate."  20 U.S.C. § 1415(i)(2)(C)(iii).  "The

22  IDEA's authorization to grant 'appropriate relief' encompasses the full range of equitable

23  remedies and therefore empowers the court to order adult compensatory education if

24  necessary to cure a violation." *Parents of Student W. v. Puyallup Sch. Dist.*, 31 F.3d 1489

25  (9th Cir. 1994).  The Court's authority may be broad, but at the same time the Court considers

26  it inadvisable to award a remedy was not available at the administrative proceeding.  Rather,

27  the Court will conform its orders to the legislative intent to protect the State's interest in

28  certifying public schools receiving public funds.  The  plain language of the statute requires

prospective placement in a certified private school, and it would be inappropriate to reject this restriction and order placement at a non-certified nonpublic school.

## IV.    Conclusion and Order

The District's counterclaim is **DISMISSED WITH PREJUDICE** in its entirety.  The plaintiff's complaint is **STAYED** and **REMANDED** to the OAH for a final determination by a hearing officer as to the following two issues: (A) whether the February 7, 2008 IEP placement was appropriate under the IDEA and, if not, (B) whether the private parental placement at Fusion appropriate under the Act.  The Court finds the Plaintiff was the prevailing party in the ALJ hearing.  The Court also finds the Plaintiff has waived her right to appeal the ALJ's decision that the Defendant prevailed on twelve specific issues which the Plaintiff did not appeal.

**IT IS SO ORDERED**.

DATED:  January 27, 2011

**HONORABLE LARRY ALAN BURNS**
United States District Judge