# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY STRUBLE, As Conservator for CS, | CASE NO. 07cv2328-LAB (CAB) |
| Plaintiff, | **ORDER GRANTING JOINT MOTION TO WITHDRAW OBJECTION;** |
| vs. | |
| | **ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES; AND** |
| FALLBROOK UNION HIGH SCHOOL DISTRICT, a Local Educational Agency, | **ORDER OF DISMISSAL** |
| Defendant. | |

Plaintiff filed this action as conservator for CS, bringing claims under the Individuals with Disabilities Act (IDEA). She sought review of a decision by California's Office of Administrative Hearings (OAH), arguing that Defendant failed to offer and provide a free appropriate public education ("FAPE"). On January 27, 2011, the Court issued an order upholding the decision by California's Office of Administrative Hearings (OAH) but remanding for determination of two issues. Following a hearing, the OAH issued its decision. Plaintiff maintains she prevailed at that hearing, and has moved for attorney's fees which she says are authorized under 20 U.S.C. § 1415(I)(e)(B). The total sought amounts to $143,905.45. The motion was opposed and heavily briefed, and is now ready for adjudication.

/ / /

1    Initially, Defendant filed an objection to Plaintiff's reply brief (Docket no. 65, objecting
2    to Docket no. 63), but the parties filed a joint motion to withdraw that objection (Docket no.
3    66). The joint motion is **GRANTED** and the objection is deemed withdrawn.

4    Plaintiff's motion for an award of attorney's fees (the Motion) was relatively brief,
5    outlining the procedural history of the case, citing authority for the principle that the Court
6    was authorized to award fees, and requesting the award. It was supported by a declaration
7    substantiating the amount of fees charged. Defendant's opposition was quite lengthy,
8    challenging the degree of success obtained and the appropriateness and reasonableness
9    of the fees. Defendant does not oppose an award of some fees and costs, but argues the
10   amount should be much lower: a total of $23,378.15 in fees and costs for work performed
11   by Ellen Dowd, Esq. and $18,840.32 in fees and costs performed by Tania Whiteleather,
12   Esq. Plaintiff's reply brief addressed the opposition and therefore included more substantial
13   arguments.

14   **Legal Standards**

15   Under 20 U.S.C. § 1415(i)(3)(B)(i)(I), the Court, in its discretion, may award
16   reasonable attorney's fees as part of the costs, to a prevailing party who is a parent of a child
17   with a disability. *See Aguirre v. Los Angeles Unified School Dist.*, 461 F.3d 1114, 1117 (9th
18   Cir. 2006) (parent seeking award of attorney's fees must be a prevailing party and must seek
19   reasonable attorney's fees).  The Court's discretion is limited by § 1415(i)(3)(C)–(F).

20   For a party to prevail, there must be a "material alteration of the legal relationship of
21   the parties." *Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 374 F.3d 857, 865 (9th.
22   Cir.2004) (citing *Buckhannon Board & Care Home, Inc. v. W. Va. Dep't of Health & Human*
23   *Resources*, 532 U.S. 598, 604 (2001)).  "A prevailing party is one who succeeds on any
24   significant issue in litigation which achieves some of the benefit the parties sought in bringing
25   the suit." *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 825 (9th Cir.
26   2007) (citation omitted).The success must materially alter the parties' legal relationship,
27   cannot be *de minimis* and must be causally linked to the litigation brought. *Id*. (citation
28   omitted).

Where a plaintiff achieves only partial success, the Court must consider the degree of success obtained; this does not change the "prevailing party" inquiry, but does affect the size of the award. *See Aguirre*, 461 F.3d at 1119–20. A party who prevails at the administrative hearing but not at the district court level can recover fees for the administrative portion of the litigation even if fees are not awarded at the district court level. *See Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 825–26 (9th Cir. 2007).

The Court is required to support its determinations regarding attorney fees with a discussion of the most relevant criteria among those set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975). They are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal service properly, (4) whether the attorney, by accepting the case, was precluded from accepting other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id. But see In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 n.7 (9th Cir. 2011) (citation omitted) (noting that whether the fee was fixed or contingent is no longer a valid factor). The court "need not discuss each of the guidelines, so long as it discusses those most relevant to the particular case." *Quesada v. Thomason,* 850 F.2d 537, 539 (9th Cir.1988) (citation omitted). "The *Kerr* analysis is a variation of the lodestar analysis in that each of the *Kerr* factors is relevant to determining whether the number of hours or the hourly billing rate, or both, are reasonable in a particular case." *M.L. v. Fed. Way Sch. Dist.*, 401 F.Supp.2d 1158, 1169 (W.D.Wash. 2005). *See also In re Bluetooth*, 654 F.3d at 942 n.7 (citing *Hensley*, 461 U.S. at 434 n.9) (explaining that many of the *Kerr* factors are subsumed within the lodestar calculation).

**Discussion**

The most relevant of the *Kerr* factors, in the Court's view, are the results obtained, Plaintiff's counsel's customary fees (compared with fees charged by other attorneys, and

1   viewed in light of the skill required), and the time and labor required. The Court considers not

2   just the actual time and labor, but the time and effort reasonably expended. As with most

3   cases, this essentially amounts to a lodestar calculation. *See In re Bluetooth*, 654 F.3d at

4   942 n.7 (citation omitted) (noting that, except in "rare and exceptional cases," analysis of

5   *Kerr* factors typically results in an award of the amount calculated by the lodestar method).

6         **Results Obtained**

7         First, for purposes of an attorney's fees award, Plaintiff is a prevailing party. The fact

8   that she prevailed only on some claims does not change this, although obtaining only limited

9   success may be a reason to reduce the fee award.  The case took some time to adjudicate,

10   resulting in less of a recovery in terms of semesters of education for CS, but Plaintiff is not

11   to blame for the delay, which is mostly attributable to circumstances beyond her control.

12         Because of the procedural posture and complexity of the claims, and the fact that they

13   were largely based on an administrative record, the Court referred them to Magistrate Judge

14   Cathy Ann Bencivengo for a report and recommendation. After receiving objections, the

15   Court adopted the report and recommendation as modified, stayed the case, and remanded

16   for a hearing on two issues. The length of time required for adjudication of her claims meant

17   that CS spent less time receiving the education she sought for him. But, going into this case,

18   she could not know that, nor could she foresee or prevent most other delays.[1] At the same

19   time, Plaintiff did have some degree of control over the education CS received. For example,

20   at the time she filed her complaint, CS was not enrolled in any school. Only several months

21   later did he enroll. Plaintiff is, of course, entitled only to reasonable fees, so fees associated

22   with unnecessary or unreasonable portions of the litigation will not be awarded.

23         Fifteen issues were originally presented for to an administrative law judge (the ALJ)

24   for adjudication. (Report and Recommendation ("R&R"), Docket no. 44, at 3:13–28.) Initially,

25   Plaintiff prevailed as to three of those issues, which concerned CS's options for graduation,

---

27
28       [1] One such delay was occasioned by the filing of a related case by Defendant, *Fallbrook Union High School Dist. v. Struble*, 08cv49, which was originally assigned to a different judge, but transferred under this district's low-number rule. Fallbrook Union High School District withdrew the complaint in that case, and the Court awarded costs to Struble.

1    and handwriting goals. The ALJ therefore concluded that some measure of compensatory
2    education was appropriate, but the question of what type or amount of compensatory
3    education that was required was more difficult. (*Id*. at 4:7–18.) The Court later determined
4    that Plaintiff had waived CS's right to appeal the twelve issues he lost. (R&R, 23:14–24.)

5         As ordered by the ALJ, an individualized education program (IEP) meeting was held
6    on February 7, 2008 (two months after suit had been filed). At that meeting, Defendant
7    presented a graduation plan. (*Id*. at 5:16–23.) Plaintiff's counsel instead asked that the family
8    reimbursed for CS's attendance at a school called Fusion, which is not a California licensed
9    nonpublic school and which, in Defendant's view, would not provide a FAPE. (*Id*. at
10   5:28–6:4.) As a result, Plaintiff rejected the District's offer, but did place CS at Fusion.

11        Defendant asserts that Plaintiff erroneously asked that the ALJ's decision be
12   modified, which was denied by the Office of Administrative Hearings. (Oppn' to Mot. for
13   Attorney's Fees, 8:12–9:4.) It concedes, however, that at hearings held in late 2011, the ALJ
14   found Plaintiff was the prevailing party on the two remanded issues, and order
15   reimbursement for CS's attendance at Fusion, in the amount of $9,000. (Docket no. 58-1 at
16   12.)

17        Plaintiff agrees she prevailed only on two issues, but argues the issues were
18   intertwined, requiring that fees for the entire initial hearing be awarded. (Pl.'s Reply Br. at
19   3:16–28.) The only benefit she identifies from appealing is the remand and ultimate success
20   on the remanded issues. (*Id*. at 5:10–22.)

21        Plaintiff obtained success on three of fifteen issues both at the initial hearing stage
22   and in this Court, and complete success on remand. The degree of success is not simply a
23   matter of counting the number of issues and awarding fees based on the percent of those
24   issues a plaintiff succeeded on. *Hensley v. Eckerhart*, 461 U.S. 424, 435 n.11 (1983). Such
25   an approach fails to appreciate the nature of litigation, or take into account the relevant
26   factors. *Id*. The Court notes that Plaintiff did obtain essentially the relief sought. And, it must
27   be remembered, the issues were all at least somewhat related, making it difficult to separate
28   out the hours. *See id*. at 435 (where a plaintiff's claims involve a common core of facts or are

based on related legal theories, much of counsel's time will be based on the litigation as a whole, and cannot easily be divided on a claim-by-claim basis). The Court therefore "focus[es] on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id*.

As far as this factor is concerned, the Court concludes Plaintiff obtained largely the relief she was seeking, so no reduction in hours is appropriate based on that factor. Although Defendant argues the results following remand were "meager" based solely on the type of expenses ultimately reimbursed (Opp'n to Mot. for Attorney's Fees, 24:7–25:8), the Court rejects this argument. Such an argument implies that Plaiintiff's counsel (at this stage) should have made additional argues and, had she done so, would have recovered more money.  This is merely second-guessing; had Plaintiff's counsel made the arguments Defendant now suggests, there is no way of knowing whether the ALJ would have awarded more money. And in any case, Defendants' argument that they got away with paying too little in reimbursement and therefore should be rewarded for this is too clever by half. If they unfairly benefitted before the ALJ, it would not be reasonable to reward them a second time for it by reducing the fee award.  In any case, the argument itself shows that counsel was appropriately limiting billings by presenting evidence informally and refraining from making requests that might not have been warranted. This merits no reduction.

The reasonableness of the hours expended at all stages of litigation, however, is a separate matter, to be considered separately. Even if Plaintiff succeeded in obtaining a FAPE for CS, it does not follow that all hours were reasonably expended in pursuit of obtaining that relief.

**Hours Reasonably Expended**

Defendant argues, and the Court agrees, that Plaintiff need not have raised most of the fifteen issues. These issues were based on similar legal theories and a common nucleus of facts, but at the same time, including additional claims was not cost-free. Furthermore, having waived appeal on those thirteen issues, Plaintiff should not have brought them in this Court at all.  The Court concludes that a 30% reduction of fees expended at the initial

07cv2328

hearing stage and an 80% reduction in fees for work done after the ALJ's decision, at the District Court stage, is appropriate, to account for the time devoted to litigating the thirteen unsuccessful issues.

Defendant also argues Plaintiff should not be awarded any fees after the ALJ's decision was issued on November 20, 2007, because she obtained no success. She did, however, obtain a remand on two issues, on which she ultimately prevailed. The 80% reduction in fees for work performed at the District Court level takes into account the unreasonableness of appealing most of the issues. At the same time, Plaintiff wasn't free to skip the District Court stage as Defendant implies. Had she done so, she would not have succeeded on the two remanded issues. The Court therefore determines no additional reduction is required.

Plaintiff prevailed on all issues following remand, and the Court determines that no reduction in those fees is appropriate.

**Hourly Rates**

Plaintiff's counsel's hourly rate was $350 when this action was filed, and it was the rate actually used by the Court when awarding fees in *Fallbrook Union High School Dist. v. Struble*, 08cv49. She argues, however, that a reasonable rate would have been higher, and provides declarations showing that other attorneys performing similar work under similar circumstances charge more. She therefore asks the Court to award her fees at a rate of $450 per hour. Defendant correctly points out that bonuses and multipliers are prohibited under 20 U.S.C. § 1415(i)(3)(C). While awarding a higher rate based on the customary rate charged in the community for similar work is not the same as a bonus or multiplier, it does fall generally within the statutory rationale. The statute provides for an award of fees, not fees adjusted upwards after the fact.

Upon review, the declarations state the rate charged by most of the declarants as of 2010 or 2011, even though here, the bulk of the litigation was conducted earlier. While rates have not likely increased from an average of $350 to $450, it is worth remembering that some increase over time should be expected. And in any case, the Court assumes the rate

1   Plaintiff's counsel was charging, even though lower than colleagues charged, was a fair and
2   reasonable rate. If clients at arm's-length transactions had been willing to pay Plaintiff's
3   counsel more, it is likely she would have charged more. In other words, the fact that her
4   actual rate was $350 is *prima facie* evidence that this was a rate she herself had determined
5   was reasonable, and a rate the market would bear. *See People Who Care v. Rockford Bd.*
6   *of Edu.*, 90 F.3d 1307, 1310 (7th Cir. 1996) (attorney's actual billing rate for comparable
7   work is presumptively the market rate).  While the Court is aware that a reasonable rate is
8   not necessarily limited to the prevailing party's counsel's actual rate, *see Chalmers v. City*
9   *of L.A.*, 796 F.2d 1205, 1210 (9th Cir. 1986),[2] the Court believes in this case that the
10  reasonable rate and the actual rate are one and the same.

11      The Court will therefore award fees only at the lower rate of $350 for services
12  performed before remand.

13      Defendant argues that the hourly rate for Tania Whiteleather, Plaintiff's counsel
14  following remand, should be reduced from $425 (for work performed at the administrative
15  level) and $475 (for work performed at the district court level). It supports its arguments by
16  citation to rates recently awarded by other courts for Ms. Whiteleather's work, and the rates
17  charged by another attorney in the same geographic area.

18      The Court agrees Ms. Whiteleather's hourly rates are somewhat larger than would be
19  expected, bearing in mind her level of experience and especially the type of hearings.
20  Nevertheless, in view of the difficulty of the work, the rates charged in this community for this
21  type of work, and Ms. Whiteleather's own qualifications, the Court concludes that Ms.
22  Whiteleather's claimed rates of $425 for work performed in connection with the remand, and
23  $450 for work performed at the District Court level (pursuing attorney's fees) are both
24  reasonable.

25  _____

26      [2] The IDEA's provision for award of fees is intended to award costs incurred in
    litigating claims, not create a claim for punitive damages. *See Sternberg v. Johnston*, 595
27  F.3d 937, 946 (9th Cir. 2010) ("We interpret possible fee-shifting statutes in light of their
    context and the goals underlying the legislation of which they are a part.")  Therefore the
28  Court's focus is on fees actually charged, rather than fees that could have been charged, but
    weren't. This is not a case, like some others, where Plaintiff's counsel charged an artificially
    low rate to reflect non-economic (*e.g., pro bono*) goals.

**Costs**

Defendant argues that the claimed costs of $1,431.30 should be halved, because (in its view) no relief was obtained at the District Court level, and because the costs are block-billed. As noted above, Plaintiff did succeed in obtaining remand (and ultimately, success) on two issues, and obtained a FAPE for Cs. Some of the costs submitted by Ms. Dowd, such as the transcript fee, filing fee, parking, express mailing, and costs of service, would have been the same regardless of how many claims Plaintiff brought. The category labeled "Kinkos," however, is undifferentiated and there is no way to determine what proportion of those charges were reasonably incurred. At the same time, it is clear some printing or related charges must have been reasonably incurred. In view of the overall reductions in cost, the Court will reduce that of costs by 75%. *See Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.2d 1216, 1222 (9th Cir. 2010) (approving apportionment of costs by percentage, where determination of actual costs would have been impossible, and noting with approval the court's conservative approach to award of costs and fees). With this reduction, the total costs attributable to Ms. Dowd's work will be $970.61.

Ms. Whiteleather requested costs, including clerical services, for a total of $256.65, all of which the Court finds to be reasonable.

**Calculating Fees**

Plaintiff's counsel claims 241 hours worked. She, unfortunately, did not separately total billings at the initial hearing level and District Court level (although the individual hourly entries for each level are separately listed and therefore can be calculated). Defendant asserts that, at the administrative level, Ms. Dowd expended 129.5 hours, a figure she does not appear to challenge and which the Court therefore accepts. This means she performed 129.5 hours of work at the administrative level plus another 111.5 hours at the District Court level. Reducing the claimed hours by the percentages discussed above, this results in 129.5 times 70%, for a total of 90.65 creditable work hours at the administrative level, plus 111.5 times 20%, for a total of 22.3 creditable hours at the District Court level. These total out to 112.95 hours which, multiplied by $350, is $39,532.50.

1    Ms. Whiteleather billed 73.25 hours in connection with the remand, all of which the

2    Court finds to be reasonable. She also billed 5.55 hours for the fee motion, in this Court. Of

3    this, 1.95 hours was for preparing the motion itself,[3] plus .10 hour for scheduling the hearing

4    (which is required under local rules; and which, by standing order, must be performed by the

5    attorney and not staff). The only troublesome entry was 3.5 hours for "Anticipated

6    Appearance" on February 27, 2012 (a projection of future work). In fact, the hearing was not

7    held on that date; the matter was taken under submission and no appearances were

8    required. Therefore, 3.5 hours will not be awarded. The time for work at the District Court

9    level will therefore be reduced to 2.05 hours, paid at $475 per hour for a total of $973.75. For

10   Ms. Whiteleather's earlier work, the 73.25 hours will be paid at $425 per hour, for a total of

11   $31,131.25.

12   The total award of costs will be $39,532.50 (for Ms. Dowd's work), plus $32,105 (for

13   Ms. Whiteleather's work). Costs are $970.61 plus $256.65, for a total of $1,227.26.

14   **Conclusion and Order**

15   For the reasons discussed above, the Court pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I)

16   awards Plaintiff a total of $71,637.50 in attorney's fees, plus $1,227.26 in costs.

17   With this ruling, all issues have been adjudicated. As noted in earlier rulings, judgment

18   is entered for Plaintiff only on the two remanded issues; on other issues, judgment is entered

19   for the Defendant. Relief was granted to Plaintiff earlier, as noted above.  The Clerk is

20   directed to close the case.

21   **IT IS SO ORDERED.**

22   DATED:  September 18, 2012

23

24   **HONORABLE LARRY ALAN BURNS**
     United States District Judge

25

26

27

28

[3] This seems unusually low, but could be explained by the motion's being based on one already prepared, and by appropriate reliance on support staff.